# FILED

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

GEORGE LEON ADAMS
NAME (Under which you were convicted)

12021-007
PRISON NUMBER

FCC COLEMAN USP #1
PLACE OF CONFINEMENT/ADDRESS
P.O. BOX 1033
COLEMAN, FL 33521-1033

Case. 1:10-cv-01945
Assigned To : Huvelle, Ellen S.
Assign. Date : 11/15/2010
Description: Habeas Corpus

| | |
|---|---|
| GEORGE LEON ADAMS | ) |
| (Full Name)        Petitioner | ) |
| | ) |
| | ) |
| v. | ) |
| | ) |
| SCOTT A. MIDDLEBROOKS | ) |
| | ) |
| (Name of Warden, Superintendent, Jailor, or | ) |
| authorized person having custody of petitioner) | ) |
| Respondent | ) |

Civil Action No.: _____
(To be filled in by Clerk)

## PETITION FOR WRIT OF HABEAS CORPUS
## BY A PERSON IN CUSTODY IN THE DISTRICT OF COLUMBIA

### INSTRUCTIONS - PLEASE READ CAREFULLY

1.  This petition must be legibly handwritten or typed, and signed by the petitioner. Any false statement of material fact may serve as the basis for prosecution and conviction for perjury. All questions must be answered concisely in the proper space on the form.

2.  Additional pages are not permitted except with respect to the facts which you rely upon to support your grounds for relief. No citation of authorities need be furnished. If briefs or arguments are submitted, they should be submitted in the form of a separate memorandum.

3.  Upon receipt, your petition will be filed if it is in proper order and is accompanied by a $5.00 filing fee. Your check or money order should be made payable to: Clerk, U.S. District Court.

## RECEIVED

4. If you cannot afford to pay the filing fee, you may request permission to proceed in forma pauperis, in which event you must execute the affidavit on the last page, setting forth information establishing your inability to pay the costs. If you wish to proceed in forma pauperis, you must have an authorized officer at the penal institution complete the certificate as to the amount of money and securities on deposit to your credit in any account in the institution.

5. Only sentences imposed by one court may be challenged in a single petition. If you seek to challenge sentences entered by different courts, you must file separate petitions as to each court.

6. When you have completed the form, send the original and one copy to:
   Clerk, United States District Court for the District of Columbia
   Room 1225
   333 Constitution Avenue, NW
   Washington, DC 20001

7. Petitions which do not conform to these instructions may be returned with a notation as to the deficiency.

## PETITION

1. (a) Name and location of court which imposed the sentence (or detention) of conviction you are challenging: Clerk of the Court, Superior Court for the District of Columbia, 500 Indiana Avenue, NW 20001

2. (a) Date of the sentence (or detention): January 29, 1997

3. Length of sentence: 30 years to life for felony murder; 20 years to life for murder while armed; 5-15 years for robbery

4. Nature of offense involved (all counts): Attempted armed robbery; first degree murder while armed (felony murder); two counts of assault with a dangerous weapon; possession of a firearm during a crime of violence; carrying a pistol without a license;

5. (a) What was your plea? (Check one):
   ☒ Not guilty
   ☐ Guilty
   ☐ Nolo Contendere (no contest)
   ☐ Insanity

(b)    If you entered a guilty plea to one count or charge, and a not guilty plea to another count or charge, give details: _____Not Applicable_____

_____

_____

_____

_____

_____

_____

6.    Have you previously filed any petitions, applications, or motions with respect to this sentence in any court?

        ☒    Yes

        ☐    No

7.    If your answer to Question 10 was "Yes," give the following information:

    (a)    (1)    Name of Court: __District of Columbia Superior Court__

            (2)    Nature of the proceedings: __§ 23-110__

                    _____

                    _____

            (3)    Grounds raised: (1) failure of trial counsel to present alibi witnesses at trial; (2) prosecutorial misconduct in the failure to correct false testimony known to be false," (3) "failure to properly cross-examine key government witnesses to show motive for lying," (4) failure to object other crimes evidence after severance

            (4)    Did you receive an evidentiary hearing on your petition, application or motion?

                    ☐    Yes

                    ☒    No

            (5)    Result: _____Denied_____

            (6)    Date of result: Not recalled

    (b)    As to any second petition, application, or motion, give the same information:

            (1)    Name of Court: District of Columbia Court of Appeals

            (2)    Nature of the proceedings: __Petition to Recall Mandate__

                    _____

                    _____

            (3)    Grounds raised: __Ineffective assistance of appellate counsel in that he failed to perfect his D.C. Code § 23-110 Motion.__

                    _____

            (4)    Did you receive an evidentiary hearing on your petition, application or motion?

                    ☐    Yes

                    ☒    No

            (5)    Result: _____Denied_____

(6)    Date of result: __October 29, 2009__

(c)    As to any third petition, application, or motion, give the same information:

    (1)    Name of Court: _____ See Attached _____

    (2)    Nature of the proceedings: _See Attached_____

    (3)    Grounds raised: _____See Attached_____

    (4)    Did you receive an evidentiary hearing on your petition, application or motion?
        ❒    Yes
        ☒    No

    (5)    Result: _____ See Attached _____

    (6)    Date of result: _____ See Attached _____

(d)    Did you appeal to the highest court having jurisdiction for the result of action taken in any petition, application or motion?

    (1)    First petition, etc."
        ☒    Yes
        ❒    No

    (2)    Second petition, etc.:
        ☒    Yes
        ❒    No

    (3)    Third petition, etc.:
        ❒    Yes
        ☒    No

(e)    If you did not appeal from the adverse action on any petition, application, or motion, explain briefly why you did not: _____ See Attached _____

8.    State concisely every ground on which you claim that you are being held unlawfully. Summarize briefly the facts supporting each ground. If necessary, you may attach pages stating additional grounds and facts supporting same.

A.   GROUND ONE:

    (a)   Supporting FACTS (Do not argue or cite law. Just state the specific facts that support your claim:   TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO PURSUE AN ALIBI DEFENSE ON PETITIONER'S BEHALF

                For facts see attached


B.   GROUND TWO:

    (a)   Supporting FACTS (Do not argue or cite law. Just state the specific facts that support your claim:   PROSECUTORIAL MISCONDUCT IN THAT THE AUSA ALLOWED FALSE TESTIMONY TO BE PRESENTED TO THE TRIAL JURY UNCORRECTED EVEN THOUGH THE AUSA KNEW THE TESTIMONY TO BE FALSE

                For facts see attached


C.   GROUND THREE:

    (a)   Supporting FACTS (Do not argue or cite law. Just state the specific facts that support your claim:   PETITIONER'S SIXTH AMENDMENT RIGHT TO CONFRONTATION OF ACCUSER WAS VIOLATED

                For facts see attached

D.   GROUND FOUR:

    (a)   Supporting FACTS (Do not argue or cite law. Just state the specific facts that support your claim:   TRIAL COURT ABUSED ITS DISCRETION BY ALLOWING PREJUDICIAL OTHER CRIMES EVIDENCE TO BE INTRODUCED AT TRIAL

        For facts see attached

9.   If any of the grounds listed in 8A, B, C, or D were not previously presented in any other court, District of Columbia or Federal, state briefly what grounds were not so presented, and give your reasons for not presenting them:   Not Applicable

10.  Do you have any petition or appeal pending in any other court, either, District of Columbia or Federal, as to the sentence (or detention) under attack?

        ☐   Yes
        ☒   No

    (a)   If so, give the name and location of the court and case number, if known: Not Applicable

11.  Do you have any future sentence to serve after you complete the sentence (or detention) under attack?

        ☐   Yes
        ☒   No

    (a)   If so, give name and location of court which imposed sentence to be served in the future: Not Applicable

(b)    And give date and length of sentence to be served in future: Not Applicable

(c)    Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?

        ☐    Yes
        ☒    No

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

_George Ceon Adams_
Petitioner's Signature

_10-29-10_
Date

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GEORGE LEON ADAMS,

      Petitioner,

vs.

SCOTT A. MIDDLEBROOKS,

      Respondent.

PETITION FOR A WRIT OF HABEAS CORPUS
BY A PERSON IN CUSTODY IN THE
DISTRICT OF COLUMBIA
[28 U.S.C. 2241]
[28 U.S.C. 2254]

Civil Action No._____

## Relief Sought

COMES NOW, GEORGE LEON ADAMS, Petitioner, proceeding **pro se**, respectfully requesting that this Honorable Court issue a Writ of Habeas Corpus Ad Subjiciendum, specifically issuing an ORDER to the Superior Court of the District of Columbia, directing them to vacate the judgment (criminal) issued within Case No. FEL 6136-95, by Judge Robert I. Richter of the Superior Court of the District of Columbia, because of the fact that the Assistant United States Attorney obtained the judgment (criminal), in the Government's favor by unscrupulous, deceitful, in violation of due process means, and because of the ineffectiveness of trial counsel, in violation of Mr. Adams, Fifth, Sixth, and Fourteenth Amendment Constitutional Rights. In Support thereof, Mr. Adams posits the following:

### I. PROCEDURAL HISTORY

On November 3, 1995, a nine count indictment was handed down charging Mr. Adams with (1) Attempted armed robbery of Robert Hamilton in violation of D.C. Code § 22-2902 and 3202 (Count C); (2) First degree murder while armed (felony murder); (3) First degree murder while armed (pre-meditated) of Robert Hamilton in violation of D.C. Code § 22-2401 and 3202 (Count E); (4) Assault with a dangerous weapon (pistol, Ronald Wright) in violation of D.C. Code § 22-502 (Count F); (5) Assault with a dangerous weapon, Walter Brian Mountjoy, in violation of D.C. Code § 22-3204(b) (Count H); (7) Carrying a pistol without a license in violation

1

of D.C. Code § 22-3204(A) (Count I; (8) Armed robbery of Sterling Johnson in violation of D.C. Code § 2901 (Count J); (9) Possession of a firearm during a crime of violence (Armed robbery) in violation of D.C. Code § 22-3204(b) (Count K); and (10) Carrying a pistol without a license in violation of D.C. Code § 22-3204(A) (Count L).

### a. TRIAL

On February 27, 1996, Mr. Adams filed a motion to suppress statements and identification testimony, and a seperate motion to sever counts "C" through "I" of the indictment from count "J" through "L". On April 5, 1996, the Honorable Judge Truman Morrison granted Mr. Adams motion for severance. Following an evidentiary hearing on November 25-26, 1996, the Honorable Judge Robert Richter denied Mr. Adams' motion to suppress identification testimony. Mr. Adams' trial commenced on November 27, 1996, and on December 4, 1996, a jury convicted Mr. Adams on (7) counts of the indictment.

On January 29, 1997, prior to sentencing, Mr. Adams pleaded guilty to County "N" of the indictment (Robbery, a lesser included offense of Count "J", Armed Robbery of Sterling Johnson) in exchange for dismissal of Count "K" and "L". Judge Richter sentenced Mr. Adams to the following terms of imprisonment:

> Ten to thirty years (Count C)
> Thirty to life (mandatory minimum)(Count D)
> One to three years (Counts F and G)
> Five to fifteen (mandatory minimum) (Count H)
> One to three years (Count I)
> Five to fifteen (Count N)
> Twenty five years to life (Count M)
> Five years mandatory minimum

### b. MOTIONS

Following sentencing, Mr. Adams filed a timely notice of appeal, (No. 99-C)-583). On February 21,1997, Mr. Adams filed a pro se petition for a writ of

Habeas Corpus, alleging ineffective assistance of trial counsel pursuant to D.C. Code §23-110. Thereafter, defendant filed a motion of abeyance with the court of Appeal, requesting that his direct appeal be stayed until disposition of the 23-110 motion. The Court of Appeal's granted defendant request for a stay. On November 19, 1998, defendant court appointed lawyer filed a Supplementary Motion for new trial based upon ineffective assistance of trisl counsel pursuant to D.C. Code §23-110. The Court issued an order denying defendant's motion on April 26, 1999. Then, on May 19, 1999, the court of appeals issue an opinion affirming. this court's order denying defendant motion.

On June 27, 2001, defendant filed a motion for new trial based upon prosecutorial misconduct and a motion for appointment of counsel. The court denied both motion.

On october 8, 2002, defendant filed a pro se motion to vacate, set aside conviction based on ineffective assistance of counsel, motion for appointment of counsel, and motion to proceed in forma pauperis. While the In Forma Pauperis was granted, both the 23-110 motion and the motion for appointment of counsel were denied on October 10, 2002.

On March 15, 2004, defendant filed yet another pro se Motion to Vacate, correct and/or set aside convict and sentence Pursuant to D.C. Code §23-110. IN that motion, defendant took issue with trial counsel's decision in cross-examining goverment witnesses, contention similar to those raised in his two previous 23-110 motion. Defendant also question trial counsel's strategic decision to call particular witness. The third 32-110 motion was denied as successive and without merit. Defendant filed a timely appeal. (No-CO-415) On Sepember 26, 2005, appeal court denied defendant appeal and issue a memorandum opinion and judgment, soon after defendant filed a motion for rehearing en banc, on January 31, 2006, appeal court denied motion.

On October 19, 2006, Mr. Adams filed his sixth motion under § 23-110. This time, Adams argued that the trial court should reenter its March 14, 1997 Judgment and Commitment Order, the Amended Order in which it corrected the mislableing of Count N in its intial Judgment and Commitment Order, thereby restoring his right to appeal that Order and allowing him to argue to the Superior Court that, in his view, the Order erroneously vacated his second-degree murder conviction instead of his felony murder conviction. On January 30, 2007, the trial court denied Adams motion, but noted that Adams; second degree murder and attempted armed robbery conviction had never actually been vacated following affirmance of his conviction on direct appeal. Accordingly, that same day, the trial court issued an amended Judgment and Commitment Order in which it vacated those convictions and an Order releasing Adams from custody on those counts. On February 5, 2007, Adams filed a timely notice of appeal of the January 30, 2007, Judgment and Commitment Order. Adams now argued that the trial court's refusal to vacate his felony murder conviction was an abuse of discretion, and that the prosecutor engaged in misconduct during closing argument at the 1997 trial. On December 12, 2007 the District of Columbia Court of Appeals granted summary affirmance.

On October 13, 2009 Adams submitted his petition for recall of the mandate to the District of Columbia Court of Appeals, in which he alleged ineffective assistance of appellate counsel, stating that appellate counsel was ineffective for not raising the issues that he is raising within this petition. On October 29, 2009, the Court of Appeals denied the petition for recall of mandate.

## c. STATEMENT OF FACTS

Goverment witness (1)

Ronald Wright, aquaintance of the decedent and client of the methadone clinic located across the street from the wooded area where the robbery occured (Tr. 12/2/96 at 55). Wright entered the woods, alone, to take drugs, when he saw the decedent and Brian mountjoy preparong to take drugs as well (Tr. 12/2/96 at 57-58). After the decedent lowered his pant to inject the drugs, two men entered the area and asked him where did he get the grugs from. The men left for a few minutes and the returned with one of the them holding a gun, telling Mountjoy, Wright and Hamilton to take everything out of the pocket, (Tr. 12/2/96 at 4). Wright began to run as well, but before he reached the end of the woods he heard a gunshot (Tr. 12/2/96 at 6 -69). Wriht saw the two robbers exit the woods and go halfway down the block, get into a small, newly painted blue car and head south toward M Street, (Tr. 12/2/96 at 70, ). When asked, do you have any questions, this is the man who pulled a gun on you on July 22, 1995? He look like him, (Tr.12/2/96 at 77).

### CROSS-EXAMINATION

Wright testified that the man with the gun was 5'7" dark complected medium buldt, little mustach, age 35-40 (Tr. 12/2/93). Wright sated that the defendant

was a lot toller, more heavior and brown complextion, (Tr. 12/2/96 at 95-96).

Goverment witness (2)

Walter Brian Mountjoy, local resident and aquaintance of the decedent,
testified that in July 22, 1995, between 9 oclack and 9/30 am he was looking
for the decedent to by heroin, (Tr. 12/2/95 at 103). Upon locating the decedent
he went into the woods with him where he saw Ronald Wright and anothe male there
already. He brought the drugs and began to shoot up  when two other black males
entered the area and asked the decedent whether "he had anymore 'caine left,"
to which the decedent replied "no" (Tr. 12/2/96 at 103-105, 109). The men left
and returned within minutes, one of the holding a gun that looked like a revolver
(Tr. 12/2/96 at 112). Mountjoy ran, cutting his face on a passing branch in the
process, and heard a gun shot before he exited the woods (Tr. 12/2/96 at 112).
He called 911 from a parking lot, then later to returned to the wooded area to
speak with the police (Tr. 12/2/96 at 115-116). Walter Mountjoy was shown some
photographs and could not positive identify the person who had the gun (Tr.12/2/96
at 117-118).

CROSS-EXAMINATION

Walter Mountjoy provided a description of the person who had the gun 5'10'
slight facial hair (like he haven't shaved) about 40 years of age and a very
dark complexion,(Tr. 12/2/96 at 126-127). Mount testified that had seen the
person with the gun on serveral occasion in the more than one place, (Tr.12/2/96
at 128). Mountjoy could not identify the person with the gun through the

the photo array even after Det. Leach told him that his picture was in the
photo spread, (Tr. 12/2/96 at 130).
Government witness (3)

Reginald Jackson, acquantance of the decedent and client at the methodone
clinic, testified that he saw the decedent on July 22, 1995, in the methodone
clinic between 9 and 9/30 am, (Tr. 12/2/96 at 147-14 ). Jackson said that
after he had finished within the clinic, he stood outside with other people,
where he heard what he thought was a firecracker, (Tr. 12/2/96 at 14 -149).
As a crowd gathers, he  saw two males run out of the woods, jump into a
gray/blue car parked on first street, and leave the area, (Tr. 12/2/96 at
150-157). Then two other individuals ran out of the woods; one was a white
male with a bleeding scar who ran toward the phone booth at MC.Donald's
the other was Ronald-Wright. (Tr. 12/2/96 at 153).

CROSS-EXAMINATION

Reginald Jackson, testified that on July 22, 1995, while standing on
first street when he heard what he thought was firecracker (Tr. 12/2/96
at 154-155) saw four people run out the woods, one of them was a white fellow
with a scare on his cheek and the other one was Ronald Wright, (Tr. 12/2/96
at 155). The other two, was two black males, that jumped into a car parked
four or five spaces from the wooded area; facing the Grey Hound bus station
(Tr. 12/2/96 at 155-156). The two men jumped into a faded blue car that
speeded off toward the bus station (Tr. 12/2/96 at 157). Jackson could not
identify the defendant "the only thing that he remembers was that, the men
was in there twenties, (Tr. 12/2/96 at 15 ).
Goverment witness (4)

Robin Fitzsimmons, an acquaintance of the decedent and a client of
the Methadine Clinic, testified that on the morning of July 22, 1995, she
saw the decedent while she was in teh woods to use drugs, but left, (Tr.

12/2/96 at 166). In the wooded area were a black male who lived in a tent
in the wooded area and a white man (Tr. 12/2/96). As she was stnading at
the entrance to the woods Fitzsimmons heard a gunshot from "out of the woods,"
then as she was reentering the woods, she saw two black men coming out of
the wooded area, one was an older man about 5'7" tall (Tr. 12/2/96 at 170-
171.) Later on Detective Leech and Detective hamil showed Ms.Fitzsimmons
a photo array; she picked out the photograph of hte man that had bumped
her as she re-entered the woods (Tr. 12/2/96 at 175). She also identified
a photograph of a car as the one that the men had gotten into after she
had heard the gunshot (Tr. 12/2/96 at 176).

CROSS-EXAMINATION

Ms.Fitzsimmons admitted that she suffers from memory lost (Tr.12/2/96
at 179). Because of her chemical inbalace she has to take lithium twice
a day (Tr. 12/2/96 at 179). On the day of July 22, 1996, when Bobby Hamilton
was murders, she admitted that she was high. "She had taken heroin, cocaine
and xanaxes" (Tr. 12/2/96 at 206-207).

RE-DIRECT

Ms. Fitzsimmons stated that she knew the defendant from division avenue,
and that the defendant looked like the older guy that bumped into her coming
out of the woods, (Tr. 12/2/96 at 206-207).
Government witness (5)

On July 24, 1995 Sterling Johnson, another acquaintance of the decendant
and a client of the Methodone Clinic, was at a bus stop on New York and
North Capiton, N.E. at around 1 to 2 p.m., selling drugs (Tr. 12/2/96 at
213-217). A black car pulled up around the corner; "Bay Brother" exited
and approached me asking for drugs, he then robbed Johnson at gunpoint,
saying, "you don't want to end up like that white boy Bobby", (Tr. 12/2/96
at 21 ). Johnson told Detective Leech about the robbery and gave him the

tag number. When shown a photo array, he chose appellant's photograph immediately as the same "Bay Brother" who had robbed him (Tr. 12/2/96 at 225-227). Johnson identified defendant in open court, (Tr. 12/2/96 at 209-210).

CROSS -EXAMINATION

Johnson testified that on July 22, 1995 he saw the defendant about 7:45 a.m. to :30 a.m. and the described of the defendant on that day was 6'1" to 6'2" in height. 225 to 245 pounds, brown skin and with a close hair cut, (Tr. 12/2/96 at 237-239). Johnson stated that the defendant looked pretty much the same as he did in court now, (Tr. 12/2/96 at 239-240). Government witness (6)

Tommy Facen, who knew both decedent and Sterling Johnson, was standing alone on the corner of First and N. Street N.E. aloneside a mailbox on the morning of July 22, 1995, (Tr. 12/3/96 at   ). He saw Mountjoy "all scratched up running form the woods toward MC'Donalds, then one or two minutes later, heard two gunshots, (Tr. 12/3/96 at  -10). He then saw two men run from the woods and enter a dark blue older model car which drove towards MC'Donald's (Tr.12/3/96 at 12-14). Two days later, on july 24, 1995, he stood with Sterling Johnson at a bus stop on the corner of North Capital and New York Ave., N.E. when a dark blue car with Maryland tags pulled up and jumped right out and said nigger give it up, (Tr.12/3/96 at 16-1 , 20). Facen said that appellant got out of the car and began to rob Johnson? He could not tell whether appellant had a weapon, (Tr. 12/3/96 at 17-1 , 20). He ran across the street watched the robbery take place, and observed appellant go back into the same car and leave the scene, (Tr. 12/3/96 at 20). On the Morning of jUly 25, 1995, while standing at the Methadone Clinic with Sterling Johnson, he recongnized the same car in the area and were able to get a full Maryland

tag number, which was AME-245, (Tr. 12/3/96 at 21). He identified defendant in open court.

The following day, July 26, 1995, Park Police Officer John Dowd received a look out request from Metropolitan Police Detective Arthur Leech for a look out for a black Pontiac bearing Maryland tag AMC-245, as having been involved in a homicide and/or robberies, (Tr. 12/3/96). at 7:30 a.m. on July 27, 1995, Dowd and another officer asked the occupants (one of whom Dowd identified in open court as appellant) to exit the vehicle, (Tr. 12/3/96 at 3 ). By questioning the individuals he learned appellant's name and nickname He contacted Detective Leech, who wanted to talk to the subject, and dtained appellant and the driver in handcuffs for 30 to 45 minutes until Leech arrived (Tr. 12/3/96 at 39). Detective Leech arrived 30 to 45 minutes later, took appellant to the homicide office.

The court denied appellant's motion for judgment of acquitted.

Defense Witness (1)

Molly Gradill, an acquanintance of the decedent and client of the Methadine Clinic, stated that  on the early morning of July 22, 1995, she and Patricia Kins were in a van at the corner of First and N.Street behind a small white car at a stop sign. She saw a female run out of the woods screaming "shots" followed by several other people, all of them running towards first street. She also saw three young black idividuals run out of the woods in the opposite direction. ALl three got into an older blu/green dodge swinger or Plymouth Duster and the driver threw what appeared to be a gun across from the front seat, (Tr. 12/3/96 at 75-7 ). Gardill followed the blue-green car to try to get the car tag number, but was unsuccessful despite the fact that she was often as close as only four car lengths with no traffic between her and the blue/green car. (Tr. 12/3/96 at  1, 92-94). She then returned to the crime scene and spoke with a police officer, she discovered the identity

of the homicide victim, a friend of her husband's, (Tr. 12/3/96 at 75-82).
Gardill also knew Ms. Robinson Fitzsimmons, who told Gardill that she had
been in the woods when the shooting occurred and that she had taken the
decedent's money, (Tr. 12/3/96 at 83). The three individuals that Fitzsimmons
described to Gardill matched the description of the three individuals that
she had seen leaving the woods, (Tr. 12/3/96).

Defense witness (2)

Hugo Rodriguez, an acquaintance of the decedent and a sometimes client
of the Methadone Clinic, testified that on July 22, 1995, he had gone to
look for drugs on North Capital and N Street, (Tr. 12/3/96 at 103-105).
He drove in the car with his brother-in-law and noticed a blue 1984 or 84
model car behind him, (Tr. 12/3/96 at 108). As he parked his car, the occupants
of the other vehicle (who Rodriguez described as a black male, age 30 to
40, height 5' 8" and weighs about 180 lbs) got out as well, (Tr. 12/3/96
at 111-112). When Rodriguez heard that "Bobby" had been shot, he and his
brother-in-law went into the woods and saw the decedent alive but bleeding,
(Tr. 12/3/96 at 113-114). Rodriguez was not able to identify Adams as one
of he occupants of the blue car that he had seen that morning, as he was
not close enough to identify the faces of the occupants of that vehicle,
(Tr. 12/3/96 at 114).

ARGUMENT

Procedural Default

As is well known, collateral challenges to convictions and sentences
imposed by the District of Columbia Superior Court must be brought in that
court under D.C. Code § 23-110. See Blair-Bey v Quick, 151 F.3d 1036, 1042
(D.C. Cir 1998)((§ 23-110 is exclusive remedy for such challenges). Mr.
Adams has already made several motions under § 23-110, all of which have

been denied. "An application for a writ of habeas corpus in behalf of a
prisoner who is authorized to apply for relief by motion [under § 23-110]
shall not be entertained by...any Federal...court of it appears...that the
Superior Court has denied him relief unless it also appears that the remdy
by motion is inadequate or ineffective to test the legality of his detention."
D.C. Code § 23-110(g). Unlike other prisoners convicted in state courts
or those convicted in a United States District Court, "District of Columbia
prionser[s] ha[ve] no recourse to a federal judicial forum [under either
Section 2254 or Section 2255] unless [it is shown that] the local remedy
is inadequate or ineffective to test the legality of his detention." Garris
v Lindsay, 704 F.2d 722, 726 (D.C. Cir. 1986)(internal footnote and quotation
marks omitted); see Byd v Henderson, 119 F.3d 34, 36-37 (D.C. Cir. 1997)("In
order to collaterally attack his sentence in an Article III court a District
of Columbia prisoner faces a hurdle that a federal prisoner does not.")

Generally, "[s]ection 23-110 has been found to be adequate and effective
because it is coextensive with habeas corpus." Saleh v Braxton, 788 F.Supp.
1232 (D.C. 1992); accord Blair-Bey v Quick, 151 F.3d at 1042 (describing
§ 23-110 remdy as "analogous to 28 U.S.C. § 2255 for prisoners sentenced
in D.C. Superior Court who wished to challenge their conviction or sentence").

In determining whether the local remedy is 'inadequate or ineffective'
this Honorable Court is guided by judicial interpretations of the statutory
provisions enabling federal prisoners to challenge their convictions. The
federal and local statutes are nearly identical in language, and functionally
they are equivalent. The remedy now available to District of Columbia prisoners
was patterned after that conferred upon federal prisoners, and both remedies
are commensurate with habeas corpus. That judges of the Superior Court do
not have tenure and salary protection afforded federal judges does not call

for a different conclusion. "[T]he judges of the Superior Court of the District of Columbia must be presumed competent to decide all issues, including constitutional issues, that routinely arise in the trial of criminal cases." Garris v Lindsay, 794 F.2d at 726 (quoting Swain v Pressley, 430 U.S. 372, 382-83 (1977)(footnotes ommitted). The mere denial of relief by the local courts does not render the local remedy inadequate or ineffective. See id. at 727; Charles v Chandler, 180 F.3d 753, 756-58 (CA6 1999)(citing cases); Wilson v Office of the Chairperson, 892 F.Supp. 277, 280 (D.D.C. 1995).

In the case sub judice, the reason why a D.C. Code § 23-110 motio is inadequate or ineffective ties directly into the exhaustion requirement of habeas corpus law. State remedies are not deemed exhausted until Mr. Tucker utilizes all procedures under state law to raise his or her claim. See 28 U.S.C. § 2254(c)(2000). See also § 2254(b)(1)(exhaustion is not required if "there is an absence of available State corrective processes" or certain cicumstances "render such processes ineffective to protect the [petitioner's] rights"). Mr. Adams has properly satisfed the exhaustion requirement by properly pursuing a claim throughout the entire appellate process of the state. See Justices of Boston Mun. Court v Lydon, 466 U..S. 294, 302-03 (1984)(exhaustion requirement satisfied by presentation of claim on appeal to state supreme court from denial of motion to dismiss); Jackson v Edwards, 404 F.3d 612, 618-20 (CA2 2005)(exhaustion requirement satisfied because state law claim unavoidably raised federal due process claim); and Jones v Dretke, 375 F.3d 352, 355 (CA5 2004)(exhaustion requirement satisfied because state courts sua sponte examined federal constitutional claims). In the case sub judice, as can be seen from the afore PROCEDURAL HISTORY, Mr. Adams has presented the claims that he is presenting to this Honorable Court in multiple D.C. Code § 23-110 motions and a petition to recall mandate. As such, both the Superior Court and the District of Columbia Court of Appeals

have had a full and fiar "opportunity to apply controlling legal principles
to the facts bearing upon [Mr. Adams'] constitutional claim." Picard v Connor,
40 U.S. 270, 276-77 (1971)("state prisoner [must] present the state courts
wih the same claim that he urges upon the federal courts"); see also Duncan
v Henery, 513 U.S. 364, 365-66 (1995)(per curiam)(exhaustion requirement
not satisfied because petition failed to apprise state courts that evidentiary
ruling of which he complained rot only violated state law, but also denied
due process of law under 14th Amendment; [if state courts are to be given
th opportunity to correct the alleged violations of prisoners' federal rights,
they must be surely alerted to the fact the prisoners' are asserting claims
under the U.S. Constitution"); Anderson v Harless, 459 U.S. 4, 6 (1982)("[T]he
habeas petitioner must have 'fairly presented' to the state courts the 'substance'
of his federal habeas corpus claim"); Humphrey v Cady, 405 U.S. 504, 516
n. 1 (1972)("The question ... is whether any of the petitioner's claims
is so clearly distinct from the claims he has already presented to the state
courts that it may be fairly said that the state courts have had ho opportunity
to pass on the claim"); see, e.g., Onifer v Tyszkiewicz, 255 F.3d 313, 315
(CA6 2001)(exhaustion requirement satisfied because applicant identified
constitutional violations during state court proceedings). In the case sub
judice, there is no doubt that Mr. Adams has clearly presented the claims
that he is presenting within this petition to the Superior Court. However,
it is not Mr. Adams' fault that the Superior Court has failed to address
the claims that he has presented to the Superior Court. See Dye v Hofbauer,
126 S.Ct. 5, 6 (2005)(per curiam)("Failure of a state appellate court to
mention a federal claim does not mean the claim was not presented to it.").
In Dye, the petitioner's brief filed in a state court clearly outlined specific
allegations of prosecutorial misconduct and cited to federal constitutional

provisions and supporting caselaw. Id. the Court held that the petitioner's claims were properly presented before the state court and directed the state court of appeals to address the claim on remand. Id; see also Smith v Digmon, 434 U.S. 332, 333-34 (1978)(per curiam); see, e.g., Johnson v Pinchak, 392 F.3d 551, 556 (CA3 2004)(exhaustion requirement satisfied because petitioner properly raised claim in state courts though courts declined to address it). Accordingly, it should be duly noted that because of the fact that the Superior Court and the D.C. Court of Appeals failed to address, and in some instances refused to address Mr. Adams' myriad due process and ineffective assistance of counsel claims, this Honorable Court should allow them to be heard on the merits, in this forum, pursuant to constitutional caselaw. As such, it should also be duly noted that, as states before, that the reason why the D.C. Code § 23-110 remedy is inadequate or ineffective to test the legality of Mr. Adams' detention is because of the fact that the Superior Court refuses to act upon and/or consider the merits of his myriad § 23-110 motions.

Which brings us directly to the issue of the procedural default of this petition, and why it should be excused. Being that the D.C. Code § 23-110 petition is an inadequate and ineffective remedy for the reasons given above, it would be an absolute miscarriage of justice to not consider the federal habeas corpus petition on the merits, being that Mr. Adams is making substantive and procedural due process claims, which means that the possibility does exists that the Superior Court criminal judgment is void, possibly. Accordingly, this Honorable Court should excuse the default, and allow this habeas corpus petition to be heard and decided on the merits.

To Mr. Adams' first claim of error, he would like for this Honorable
Court to apply the following cases:

Montgomery v Petersen, 846 F.2d 407 (CA7 1988)(Trial counsel's failure
to investigate and interview the only disinterested alibi witness, a store
clerk whom petition purchased a bicycle from on the same day of robbery,
constituted ineffective assistance of counsel).

Tosh v Lockhart, 879 F.2d 412 (CA8 198)(Trial counsel's failure to
produce three alibi witnesses under the facts and circumstances of this
case constituted ineffective assistance of counsel).

Code v Montgomery, 799 F.2d 1481 (CA11 1986)(Trial counsel's failure
to conduct a pretrial investigation, interview or subpoena alibi witnesses
and move for continuance, amounted to ineffective assistance of counsel
and warranted a new trial.).

Jemison v Foltz, 672 F.Supp. 1002 (E.D. Mich. 1987)(Defense counsel's
failure to interview an alibi witness, whom petitioner requested, compounded
with the other errors, constituted ineffective assistance of counsel.)

Brown v Myers, 137 F.3d 1154 (CA9 1998)(Trial counsel's failure to
investigate alibi defense or to present any alibi witnesses to corroborate
petitioner's testimony undermined confidence in outcome of trial and constituted
ineffective assistance of counsel.)

United States v Dawson, 857 F.2d 923 (CA3 1988)(Trial counsel's failure
to interview and call alibi witness who put the defendant in another town
at the time of the crime constituted performance below an objective standard
of reasonableness. There existed a reasonable probability that the results
of the trial would have been different absent trial counsel's unprofessional
errors and omissions.)

Wade v Armontrout, 798 F.2d 304 (CA8 1986)(Trial counsel's failure

to present defendant's alibi defense constituted ineffective assistance
of counsel.)

U.S. ex rel. Patterson v Neal, 678 F.Supp. 749 (N.D. Ill. 1988)(Trial
counsel's failure to call alibi witness and present an alibi defense stated
a sufficient claim of ineffective assistance of counsel and required an
evidentiary hearing to resolve the claim.)

thames v Dugger, 848 F.2d 149 (CA11 1988)(Trial counsel's failure to
move for a severance of pending charges or to call alibi witnesses, may
constitute ineffective assistance of counsel and requires the district court
to review the entire record to resolve the ineffectiveness claim.)

Lawrence v Armontrout, 900 F.2d 127 (CA8 1990)(Failure of counsel to
contact and investigate all potential alibi witnesses when defendant provided
counsel with their names, which would have supported counsel's defense of
misidentification, constituted ineffective assistance of counsel.)

Grooms v Solem, 923 F.2d 88 (CA8 1991)(Trial counsel's failure to investigate
or attempt to locate potential alibi witnesses, or to argue on the record
for the admission of alibi witnesses' testimony, constituted ineffective
assistance of counsel.)

compared to those which raised. Generally, only when ignored
issues are clearly stronger than those presented, will the presumption
of effective assistance of counsel overcome. <u>Gray</u>, 800 F. 2d at
646,. Also see...<u>Hollenback</u>, 987 F. at 1275, also see...<u>Lattimore v.
Dobois</u>, 152 F. Supp. 2d 67 1th. cir. 2001. The ultimore question
the court ask is "whether, but for counsel's errors, there is a
reasonable probability that the outcome of the proceeding [here]
appellant's [direct appeal] would have been different.

## TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO PURSUE
## AN ALIBI DEFENCE ON DEFENDANT'S BEHALF

To prevail on his claim of ineffective assistance of counsel,
appellant must establish: (1) "that counsel made errors so serious
that counsel was not functioning as the "counsel guaranteed by the
Federal Constitution's Sixth Amendment," and (2) "that there is
a reasonable probability that, but for counsel's unprofessional
errors, the result of the proceeding would have been different."
<u>Strickland v. Washington</u>, 466 U.S. 668 687, 694, 104 S. ct. 2052,
80 L.ed 2d 674 (1984). This court reviews a trial court's decision
to deny a claim of ineffective assistance of counsel without a
hearing for abuse of discretion. Lane v. United States, 737 A2d

541, 548 (D.C. 1999). However, the trial Judge's legal conclusion are reviewed de novo. Inparticular, "we owe no difference to the trial court's legal conclusion as to whether counsel was deficient. "United States v. Little, 851 A2d 1280, 1287 n.10 (D.C 2004).

When a defendant in a §23-110 motion raises a claim of ineffective assistance [918 A2d 4033 of counsel, there is a presumption that the trial court should conduct a hearing "Lane supra 737 A2d at 548. (citing Newman, supra 705 A2d at 261; Gray v. United States, 617 A2d 521 (D.C. 1992); Sykes v. United States, 585 A2d 1335, 1339 (D.C.)). We "will affirm the trial court's denial of a §23-110 motion without a hearing only if the claims (1) are palpably incredible; (2) are vague and conclusory; or (3) even if true, do not entitle the movant to relief. Newman, supra 705 A2d at 261 quoting Gregg v. United States, 395 A2d 36, 39 (D.C. 1978)). Furthermore, "[i]n order to uphold the denial of a §23-110 motion without a hearing, we must be satified that under no circumstance could the petitioner establish facts warranting relief."Hilliard v. United States, 879 A2d 669, 671 (D.C. 2005), (citation omitted). [A] ny question regarding the appropriateness of a hearing should be resolved infavor of holding a hearing. "Newman, supra, 705 A2d at 261 (citation omitted.

In Petitioner's case trial counsel was ineffective for failing to comply with D.C. rule 12.1 of the Superior Court rules. Under rule 12.1 trial counsel had to give the Government a 10 days notice of petitioner's alibi defence. Rule 12.1 States the following:

RULE 12.1

(a) Notice by Defendant. Upon written demand of the attorney for the government stating the time, date, and place at which the alleged offense was committed, the defendant shall serve within ten days, or at such different time as the court may direct, upon the attorney for the government a written notice of the defendeant's intention to offer a defense of alibi. Such notice by the defendant shall state the specific place or places at which the defendant claims to have been at the time of the allege offense and the names and addresses of the witnesses upon whom the defendant intends to rely to establish such alibi.

(b) Disclosure of Information and Witness. Within ten days thereafter, but in no event less than ten days before trial, unless the court otherwise direct, the attorney for the government shall serve upon the defendant or the defendant's attorney a written notice stating the names and addresses of the witnesses upon whom the government intends to rely to establish the defendant's presence at the scene of the alleged offense and any other witnesses to be relied on to rebut testimony of any of the defendant's alibi witnesses.

(c) Continuing Duty to Disclose. If prior to or during trial, a party learns of an additional witness whose identity, if known, should have been included in the infoemation furnished under subdivision (a) or (b), the party shall promptly notify the other party's attorney of the existence and identity of such additional witness.

(d) Failure to Comply. Upon the failure of either party to comply with the requirements of this rule, the court may exclude the testimony of any undisclosed witness offered by such party as to the defendant's absence from or presence at, the scene of the alleged offence. This rule shall not limit the right of the defendant to testify.

Prior to the start of trial, Petitioner had informed trial counsel of his defense of alibi. With the aid and assistance of Mr. Melvin Jones, Petitioner was able to provide trial counsel with the names and addresses of witnesses that would have placed Petitioner at a different location of town during the charged conduct in the indictment. The list of names and addresses are indentical to the list that the government provied counsel with as part of the discovery. See.exhibit B .

Mr. Robert Simms and Mr. Carl Clark was under defence subuena. "There testimony would be that on July 22, 1995, between the hours of 8/30 am to 10/am that the defendant George Adams "know as Bay bro" was with them on the back side of 56th. and 57th. See... Affidavit exhibit C

Ms. Jackie wilson, Mr. Melvin Jones and Mr. James Owens had contact Mr. Horton, appellant's counsel, and asked him to send out his investigator to their house so that they could make out an affidavis in support of Mr. Adams innocense. He, Mr. Horton, ignored their request. Ms. Jackie, became insistent, she call several more times to Mr. Horton Office before he became arrogant and unprofessional and stated that "he don't need her.

Ms. Jackie Wilson, testimony would be that on July 22, 1995 between the hours of 8/45 to 9/10 she left her house, "which is located on the south side of 58th. st." In route to the store,

"which is located on 56th. and central ave. S.E." She went through the back side of 57th. and 56th. place, where she met up with Mr. Melvin Jones and Bay bro. At that time, she and Bay bro got into an argument about money, she stayed for a few minutes then left. See...Affidavit exhibit  D

The defense of an alibi is admissable if the defencse gives the government as opportunity to investigate the truthfulness of the alibi. However counsel failed to comply with the rules set by the federal rules of criminal procedures.

According, had trial counsel informed the government of his intent of presenting an alibi defense, in a timely manner, Petitioner's witnesses and witness list would be exculputory.

In Frederick v. United States, 741 A2d 427 (1999) Judge Scheld quoting out of Byrd 612 A2d 25, [i]f the testimony of exculpatory eyewitnesses has no constutional importance, it is hard to imagine what kind of defence has any impartance, 614 A2d 32.

Appellate counsel was ineffective for failing to acknownledge petition's right to an alibi defense. An appellate Court can consider an ineffective claim if the lower court's record supports the claim In this case the lower court's records will support the claim on direct appeal.

To Mr. Adams' second claim of error, he would like for this Honorable
Court to apply the following cases:

Shih Wei Su v Filton, 335 F.3d 119, 127-30 (CA2 2003)(prosecutor's
failure to correct government witness's false testimony and subsequent attempt
to bolster witness's credibility violated defendant's due process rights.)

United States v Wallach, 935 F.2d 445 (CA2 1991)(The government should
have known that one of its witnesses was committing perjury and therefore,
the defendant's convictions in this case were reversed. This is not a case
in which the government knowingly introduced perjured testimony; rather,
the court finds that the government should have known that the witness was
lying when, on cross-examination, he denied being a compulsive gambler.
The witness was the "centerpiece" of the government's case and the government
should have further investigated his claims about not being a gambler.)

PETITION'S DUE PROCESS CLAUSE OF THE
FIFTH AMENDENT WAS VIOLATED

(2)

When the prosecutor allows false testimony to go to the jury
uncorrected, he violates the due process clause of the fifth amen-
dment by not correcting the false testimony...See Beltran v Coctell,
294 F.3d 730 (5th. cir. 2002); United States v Mason, 293 F.3d 826
(2002). Also See...Barham v United States, 595 F.2d 231 (2002).

The due process clause of the fifth amendment forbids the
government from knowing using, or failing to correct false testimony.
See...Giglio v United States, 405 U.S. 150, 92 S ct. 765, 31 L.ed
2d 104 (1972). Even where defence counsel counsel is aware of falsity,
there may be a deprivation of due process if the presecutor reinforce
the deception by capitalizing on it in closing argument, United States
v Valentine, 820 F.2d 565 (2d cir. 1987); United States, v Sanfillippo
564 F.2d 176-178 (5th. cir. 1977) or posing misleading question to
the witness...United states v Barham, 595 F.2d 231, 243 n.17 (5th
cir. 1997). False evidence includes untrue testimony going to the
credibility of a witness. Napue, 360 US at 269-70, 79 S. ct at 1177;
Debose v Lefever, 619 F.2d 973-979 (2d cir. 1980).

[D]eliberate deception of a court and jurors by the presentation
of known false evidence is incompatible with rudimentary demands
of justice. "Giglio, 405 U.S. at 153, 92 S.ct. 763 (citation and
internal quoation marks omitted); accord United Statesv Agurs, 427
U.S. 97 103, 96 S.ct. 2392, 49 L.ed 2d 342 (1976) ("[T]he [Supreme]

Court has consistently held that a conviction obtained by the knowning use of perjury testimony is fundamentally unfair, and must be set aside if there is any reasonable likeihood that the false testimony could have affected the judgement of the jury.')(internal citation omitted); Napue, 360 U.S. at 269, 79 S.ct 1173)...Also See.. Money v Holohan, 294 U.S. 103, 112, 55 S.ct 340, 79 Led 791 (1935) (condeming "deliberate deception of court and jury by the present-ation of testimony of known to be perjuried"); cf. Brady, 373 U.S. at 87, 83 S.ct 1194 (nothing that nondisclosure violated due process when the suppressed evidence is material to guilt.

On July 27, 1995, Sterling Johnson made out a criminal complaint form, stating that he was robbed of drugs by a person named Bay bro. on July 24, 1995, (the day after the robbery) between the hours of 8/am and 9/am he was telling a friend of his about the robbery that occured the day before, on July 24, 1995. See...exhibit  E

In block 15 of the complaint form it reads as follows:

I have read this statement given by me or have had it read to me. I fully understand it and certify that it is true and correct to the best of my knownledge and recollection. "I understand that making a false state ment is punishable by criminal penalties (D.C. code section 22-2515)" . Sterling Johnson sign the complaint with Det. Robert Sanders as a witness.

On Thursday August 10, 1995, Sterling Johnson was subpena as a witness to the grandjury room #5 in Superior Court. Johnson was taken in the presence of a full quorun of the grandjury, commencing at 3/30 pm after being first duly sworm by the foreperson of the grandjury, was examined and testified.

*

    Johnson testified that on July 24, 1995, between the hour of
1/pm to 2/pm he was robbed of drugs by a person named George Adams
"known as Bay brother". On Tuesday July 25, 1995, (<u>the day after
the robber</u>) he tolded "Tommy Facen" about the robbery, he also
showed him "Tommy Facen" who robbed him and what type of car was
used in the robbery. See...exhibit F (grandjury report). also See.
exhibit K (PD 119 witness complaint form which corroborates---
strengthen or confirms Johnson's grandjury testimony.

*

    Tommy Facen testified in trial at 17 line 24-through 18 line 24.
See exhibit G and exhibit H that he was standing at the bus stop
on July 24, 1995, with Johnson, when petitioner pull right up at
the bus stop and jump out and said "nigger give it up" robbery in
other words, then jump into the same blue car that was used in the
murder on July 22, 1995.

    Tommy Facen also testified in trial that he was standing on
the corner of first and N st. N.E. by a mail box "by himself",
when he heard shot coming from the woods and saw petitioner run
out the woods and jump into a dark blue car with Maryland tages.
See... exhibit I

    The prosecutor, knew that it's witness Tommy Facen had conveyed
to the jury something other than the trueth, yet the prosecutor
made no attemp to correct the false evidence. In fact although
unwitting, it reinforce that facilitated deception through the question
asked to Tommy Facen:

Q...okay, did you have any discussion about the car that the
   robbers got in

   Mr. Horton: objection, your Honor
       the court overruled.

Q...did Rock give you any information about the car?
A...No...See exhibit __J__ and exhibt __F__

A conviction must be over turned which rest in part on the
knowing use of false testimony, If there is any reasonable like-
lihood that the false testimony could haved affected the judgement
of the jury. See...United States v agurs, 427 US 97 (¢ S.ct 239249.

In Bowie v United States, 243 F.3d 1109 (9th. cir. 2001). The
courts stated that when a witness with nothing to sell sometimes
embark on a methidical journey to manufacture evidence and create
something of value, setting up, betraying and falsely convicting
friend, relative and people alike. Frequently, and because they
are aware of the low value of their credibility, people will even
go as far as to create corroboration for their lies, by recruiting
other into the plot, circumstance that we are being confronted with
in this case.

To Mr. Adams' third claim of error, he would like for this Honorable
Court to apply the following case:

United States v Chandler, 326 F.3d 210, 222 (CA3 2003)(Confrontation
Clause violated because defendant not permitted to show [witness's/coconspirator's]
stake in testifying against defendant.)

PETITIONER' RIGHT UNDER THE CONFRONATATION CLAUSE

TO CROSS-EXAMINE WITNESS REGARDING BIAS WAS

VIOLATED

(3)

The Sixth Amendment of the U.S. Constitution grants a person accused of a crime the right "to be confronted with the witnesses against him. U.S. CONST. AMEND. VI. "'The main and essential purpose of confrontation is to secure for the opponet the opportunity of cross-examination. '"Davis v Alaska, 415 U.S. 308, 315 94 S.ct 1105, 39 L.ed 2d (1974)(quoting 5 WIGMORE ON EVIDENCE §1395 (3d 1940)). Bias cross-examination of a main government witness is always a proper area of cross-examination and is relevant in assessing the witness' credibility and evaluating the weight of the evidence. Indeed, this type of cross-examination "may be extremely important to the jury's determination of guilt or innocense..especially [where the witness is] an accomplice, a participant or has threatened a defended.

There can be no question that the bias of a witness is always relenvant to that witness' credibility. E.G., Ramirez v United States, 499 A2d 451, 453 (1985); Wynn v United States, 130 U.S. App. D.C. 60, 62, 397 F.2d 621 623 (1967). In a criminal case, "The Cronfront-ation Clause of the Sixth Amendment requires a defendant to have an opportunity to show bias on the part of a prosecution witness. "United States v Abel, 469 U.S. 45, 50, 105 S.ct 465, 83 L.ed 450 (1984), quoting Davis v Alaska, 415 U.S. 308, 94 S.ct 1105, 39 L.ed 2d 347 (1974). That opportunity, furthermore, is not limited to cross-examination of the challenged witness; bias may also be shown

by extrinsic evidence. IN RE. C.B.N., 499 A2d 1215, 1218-1219 (D.C. 1985).

The Supreme Court in <u>Davis v Alaska</u> further stated in this regard, cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested, subject always to preclude repetitive and unduly harassing inter-rogation, the cross-examiner is not only permitted to delve into the witness' perception and memory but the cross-examiner has traditionally been allowed to impeach, ie. discredit, the witness. [By generally discrediting the witness] the cross-examiner intend to afford the jury a base to infer that the witness' character is such that he would be less likely than the averge trustworthy citizen to be truthful in his testimony. Under such corss-examination the, counsel would have expose to the jurors #2 motivating factors that prompted Sterling Johnson to curry favor by testifing for the government.

(1)...Sterling Johnson was observe selling drugs in the District by Det. Sander while investigating the homicide of Hamilton after a promise of not charging him for drugs, he informed Det. Sanders that he was robbed by petitioner and that he might be connect to the murder...Seeexhibit _L_

(2)...Sterling Johnson, was a victum of a arm-robbery, he sworm to get even, Johnson stated, "that he was going to make sure that appellant was not going to use use a gun on anybody else. See...exhibit _M_

In this case, it would not be unreasonable to infer that Johnson's testimony was motivated by his desire not to be charged by the District...See <u>Blunt v United States</u> cited as 863 A2d (D.C. 2004). [Also] Johnson was a victim of an arm-robbery, which he sworm to get even with appellant...See <u>Hollingworth v United Stats</u>, 531, A2d 973-978. Also See...<u>Wynn v United States</u>, 130 US App. D.C. 60-62, 397 F.2d 621 623 (1967).

To Mr. Adams' fourth claim of error, he would like for this Honorable Court to apply the following cases:

United States v Manner, 887 F.2d 317 (D.C. Cir. 1989)(Though relevant on the issue of intent, evidence that a drug defendant sold drugs after the crimes with which he was charged, should not have been admitted without an on-the-record finding that the relevance outweighed the prejudicial effect.)

United States v Rhodes, 886 F.2d 375 (D.C. Cir. 1989)(It was plain error to permit the Government to introduce evidence of fraudulent checks which were in no way connected to the indicted offense involving bank fraud and forgery.)

United States v Copelin, 996 F.2d 379 (D.C. Cir. 1993)(The defendant denied ever using drugs. The government, in an effort to impeach the defendant, was permitted to introduce evidence of the defendant's positive drug test. It was plain error, however, for the court to fail to immediately caution the jury as to the limited purpose for which the evidence could be considered. (Note that this evidence was not specifically introduced under Rule 404(b), but as impeachment of the defendant's testimony.))

United States v Simpson, 992 F.2d 1224 (D.C. Cir. 1993)(The defendant was stopped on suspicion of committing a rape. He was frisked and was found in possession of Dilaudid and cocaine. He contended that he was framed by the frisking officer. The AUSA questioned the defendant at trial about his knowledge of Dilaudid. He testified that he had had Dilaudid before, but did not know much about packaging of the drug. The trial court then permitted the government to introduce evidence of the defendant's prior conviction for possessing Dilaudid. This was reversible error. No valid 404(b) purpose was offered for admitted this evidence

Admission of threat evidence, showing that a witness in a
criminal proceeding should be admitted to explain specific behavior
of the witness, such as perjury, fabrication and false statements.
When a defence counsel fail to cross-examine adverse witnesses in
a criminal matter, the violates petitioner's Sixth Amendment right
under the confrontation clause. This cannot be justified as a tactical
decision, especially in view of the fact that Johnson was motivated
by his desire not to be charge for selling drugs in the District
and to get even with petitioner for robbing him. Petitioner's was
deprive of his Sixth Amendant right, it is clear that without
Sterling Johnson's testimony about the robbery, "you don't want to
end up like the whit boy Bobby" [which had little corrobation] the
government had little or no evidence to go to trial against petitioner
for the murder of Hamilton...See Springer v United States, cited
as 388 A2d 846.

(4)

TRIAL COURT ABUSE IT' DISTRETION BY ALLOWING PREJUDICAL

CLAIM BASED ON CONSOLADATION OF OFFENSES

On the date of April 4, 1996, The government filed a motion
and affidavit requesting a order for consolidation concerning the
robbery of Sterling Johnson, No F-6137-95 and the first degree murder
of Bobby Hamilton, No F-6136-95. The government asserts that the
circumstances of the robbery were similar to the instant crime and
as a result there existed a reasonable probability that the same
person comitted both crimes, consider the statement that was made
during the curse of the robbery as stipulated by the robbery victim

Sterling Johnson, "you don't want to end up like that white boy Bobby" and because of the mutually admissible evidence set forth in Drew v United States, 118 U.S. App. D.C. 11, 16 331 F.2d 85 90 (1964).

On April 15, 1996,beofre the bench of Hon. Judge Morrison, a hearing related to the sever of these consolidated charges was held. On this date, the motion for severance was granted in favor of petitioner.

On December 2, 1996, (prior to trial) the government argued before the bench of trial Judge Richter, matters concerning the ruling announced by Judge Morrison, pertaining to the sever, dated April 15, 1996. In support of the position, the Government stated that "without the testimony of that rendered by Sterling Johnson, the case for first degree murder as pending on the same indictment would lose credence and strengh, leaving the government without a case against the petitioner. The Government argues that "Johnson's testimony of the robbery should be admitted because it is highly relevant to prove the un-questionable contested issue of identy and that Johnson v United States, 683 A2d 1087 (D.C.1996) would remove any doubts. In Johnson, appeal's court has adopted the Federal rules of evidence 403, which states:

> Although relevant, evidence may be excluded if it probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issue, or misleading the jury, or by consideration of undue wast of time, or needless presentation of cumulative evidence.

Johnson, was conviction of killing their partner in a cocain and phencyclidine (PCP) operation. On the night of September 1,

1989, while he sat in his car in the District, Carrington was shot
twice in the head, once from the passerger side of his car with a
"38" and once from the other side with a"45" . Minutes before
Carrington was killed, Johnson was seen in the passenger seat of
the car with Void in his Utility Van driving solsely behind them.
The decedant's keys and portable telephone were missing, minutes
after Carrington was shot, calls were placed to the apartment from
the phone of Carrington and Void, less than an hour after the shooting,
an unforce entry into the apartment, drugs and a nine millimeter
pistol were stolen from the rifled bed room colset(the only place
in the home was ransacked) and the two boys who, with whom Johnson
had played on prior occasions. A week after th killing, Johnson and
Void was stopped by Maryland police in Void truck, and the stolen
nine millimeter pistol was found in Johnson's position. The boys
were killed by bullets fired from the same "45" that was used to
shoot Carrington.

Appeal's court held, that the Marylant murders were not ind-
pendant because that the same evidentary stream ran through them
and the charge crime, (premediated first-degree murder while armed
of Carrington, conspiracy to distribute and possession with intent
to distribute narcotics). The same gun was used in both, they
occured close to one another in time, the second occurding in part
arguable as a consequence of the first, and they tend toprove one
another, for the cogent reason among others, that the perpetrators
of each crime was known to the two Maryland victims, and for that
reason killed them. Thus, the evidence of the Maryland offences fall
into the first of the non-Drew catagories of direct and substantial
proof of Johnson guilt of Carrington murder.

In Stweet v United States, cited as 756 A2d 366 (D.C. 2000),
relying primary on Johnson, supra, 683 A2d at 1098...Bonhart v
United States, 681 A2d 160-164 (D.C.1997).and Settles v United States,
615 A2d 1105, 1109 (D.C.1992). (quoting Robinson v United Atates,
61 U.S. App. D.C. 370-371, 63 F.2d 147-148, Cert. denied..Sweet
was convicted of first degree murder while armed and other offense.

The court of Appeal held that...(1) admission of other crimes
evidence in the form of defendant's admission that he had killed
for co-defendant in the pass, prejudiced defendant.

These charges arose out of an assault on Marcia Watson and her
nephew, Edger Watson on October 17, 1991 and the subsequent murder
of Marcia Watson on October 29, 1991. In the same trial, Sweet was
also convicted of muliple offences in the consolidated case related
to the murder of Correctional Officer Ronald Richardson, on October
`7, 1991. The offecses for which he was convicted in the Richardson
case incluled conspiracy to commit first degree murder while armed
(premeditated) and felony murder while armed. (ballistic test
determined that a bullet recomered from the Marcia Watson shooting
was fired from the same weapon as a bullet recovered in connection
with the Richardson homicide.

Appeal's court held that the evidence that Sweet had killed
other people in the pass on behalf of Hammond was not direct proof
that he killed or conspired to killed the Correction Officer at
Hammond's be-hest. See id. nor was the evidence of the pass murder
closely intertwined with evidence of the current conspiracy to
murder Richardson. The prior murder about which Sweet boasted
did not purport to be related to, or commected with, the murder of
the correction officer. Finally, sweet statement that he had "crushed"

befoer for Hammond was not necessary to the jury's understanding of the events surrounding the conspiracy to murder Richardson. reverse and remanded for new trial.

The Court of Appell's has applied a test to determine if there are enough points of similarites in the combination of circumstance's surrounding the two crimes to create a reasonable probability that the same person commited both crimes...See Easton, cited as 533 A2d. When the test is met, in a case where identity is in issue and there is abmissible, subject to the trial Judge's determination whether it is more probative than prejuidical.

THERE ARE SEVERAL STRIKING DIFFERENCE BETWEEN THE TWO CRIMES

(1) The murder of Hamilton occured in wooded area between the hours of 8/am to 9/30 am

The robbery of Johnson occured at a bus stop, in public between the hours of 1/pm to 2/pm

(2) The identification of the perpetrator of the murder of Hamilton is 5'7" in height, weighs about 167 to 180 pounds, extremely dark complexion with a bush and haven't shave in a few days.

The identification of the perpetrator of the robbery of Johnson is 6'1" to 6'2" in height, weighs about 224 pounds, brown complexion, close hair cut and about 40 years of age

(3) A old black revoler, "the kind that you don't see any more" was used in the murder of Hamilton.

a semi-automatic pistol, "with a brown handle" that loads from the bottom was used in the robbery of Johnson.

(4) A newly painted, sky blue plymonth 4 door with temporary tags (1963) was used in the murder of Hamilton.

A black Mazda or Honda, with tag nimber MD 245 (1993) was used in the robbery of Johnson.

(5) Two people comitted the murder

One person comitted the robbery.

SEE Exhibit N and Exhibit O

(6)  The perpetractor of the murder of Hamilton came on the scene
     and asked for the where about of drugs, then left the scene
     only to return with a weapon to comit the murder.

     The perpetrator of the robbery asked for drugs then waited
     for the drugs to be produced before comitting the robbery.

In the combination of circumstances surrounding the respective
crimes do not creat a reasonable probability that the same person
comitted both crimes. Several of the circumstance cited by the
government are sufficiently commenplace that add little weight to
the government case. Robberies of street level dealer of heroin
around a methadon clinic, in a high crime area, is commond. See..
Drew v United States, 118 US App. D.C. 11, 16, 331 F.2d 85 90
(1964).

In United States v Bussey, cited as 432 F.2d 1330 (1970), The
Courts held that where testimony of witnesses to robbery of tran-
mission Compony some 20 minute prior to the robbery of Sewing machine
Compony did not evice a particuar pattern to two robberies.
Especially when one District Court Judge refuse to permit joiner
was allowed by another judge at appellant's trial. Further more
admitting this evidence runs up against the "general rule..that,
upon the trial of an accused person, evidence of another offense,
wholly independant of the one charge, is inadmissible..See Jefferson
v United States, cited as 463 A2d 681 (D.C. App. 1983). Appeals
Court held that the principal behind the severance of offenses is
to  prevent extraneous and prejudicial evidence and issues from
entering in trial...See Drew at 140, 331 F.2d at 88.

In Williams Johnson, supra, 683 A2d at 1099, The appeal's court ruled that the evidence of the Maryland murder fell within the none-Drew categaries.

(1)...direct and substantial proof
(2)...closely intertwined with the evidence
(3)...or neccessary to place the crime charged in an understandable contex

The only evidence that the govenment introduce in appellant's trial that linked the two crimes together was the allege statement that was allegedly made during the curse of the robbery of Johnson. "you don't want to end up like that white boy Bobby" On April 15, [Judge Mprroson ruled that the statement was relevant and sever the case in favor of the defendant.

*******

In the opion, Judge Schwelb stated "Adams himself also revealed the connection between the two incidents by telling the victim in the second robbery that he did not want to end up like the first victim".. See exhibit P

Sterling Johnson stated in the grandjury that "petitioner just took the grugs and put them in his pocket and did'nt say a word. See exhibit Q

by admitting the evidence in appellant trial the danger of unfair prejudice was not out weigh by any probative value. The allege statement "you don't want to end up like the white boy Bobby was incontrovertible evidence. Appellant was denied effective assistive of counsel by the standard set forth in Strickland.

In *Strickland v Washington*, 466 U.S. 668 (1984), the court examined the ineffectiveness claim under a two-pronged test that examines both the objective reasonableness of the attorney's conduct and the prejudice that the defendant suffered as a result of the Attorney's errors. *Strickland*, 466 U.S. at 687, 694; In *Watson*, this Court oncfirmed that the *Strickland* standard applies to claim of ineffectiveness of appellate counsel as well as ineffective assistance of trial counsel. 536 A2d at 1065-1070.

Under *Strickland*, Appellant show that his appellate counsel Mr. Stolker performance was "deficient," meaning that it "fell below an objective standard of reasonableness. "466 U.S. at 687-688. He also has establish that his conduct prejudiced him by demonstrating a "reasonable probability that, but for counsel unprofessional errors, the result of the proceeding would have been different."*Id*. 687 694. A reasonable probability is a probability that is "suffcent to undermine condicence in the outcome. *Id*. at 694.

Appelate counsel's ineffectiveness on appeal is manifested in his failure to raise issue on appeal that would have rendered a not guilty verdict.

[A]lso in this case, petitioner satisfies the requirement of the miscarriage of justice exception set forth in *Schulp*. First, as the exception requires, Petitioner's claims are based on constitutional violation-namely that petitioner was deprive of his Sith and Fifth Amendment right to due process of law, a fair trial, and that he was denied effective assistance of counsel on direct appeal. (a) counsel fail to acknownledge petitioner's right to an alibi defence. (trial counsel fail to compy with D.C. rule 12.1 of the Superior Court rules) (b) presecutor knowly use of false

testimony in trial to a material inculpatory fact, which violates the due process clause of the Fifth amendment. (c) the failure of counsel to perfect petition's appeal by not raising issue that would have rendered a not guilty verdict on appeal as requested.

Second, Petitioner's constitutional claim are supplemented with evidence that demonstrated that he is actually innocent. The evidence, if it had been presented at trial or on appeal, would have been very damaging to the government's case. The government case at trial against petitioner consisted essentially of mis-directed evidence. It is more likely than not that no reasonable juror would convicted petitioner based on this evidence, if the evidence of his innocence had been presented at trial or on appeal.

In <u>Bousley v United States</u>, 140 Led 828 (1998), The Court has stated that to establish actual innocence, petitioner must demonstrate that," In light of all the evidence, "it is more likely than not that no reasonable juror would have convicted him, "<u>Schiup v Delo</u>, 513 US 298, 327-328, 130 Led 2d 808, 115 S.ct 851 (1995)(quoting Friendly, is innocence irrelevant.

## RELIEF REQUEST

(1)...Recall the mandate and reopen the appellant's appeal in order to fully explore and the decide whether there was ineffective assistance of counsel onfirst appeal.

(2)...reverse appellant conviction and order a new trial.

(3)...grant any relief the Honorable court sees just.

## CONCLUSION

For the foregoing reason, appellant submit that his motion to recall the mandate should be granted and his appeal reopen

Respectfully Submitted

George Leon Adams

## CERTIFICATE OF SERVICE

I swear, that a true copy of this foregoing motion was sent to the United States Attorney Office, 555 4th. St. N.W. Washington D.C. 20001 on this 29 day of Oct 2009

I

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, it is respectfully requested that this Honorable Court ORDER the lower Superior Court for the District of Columbia to vacate and reverse the criminal judgment, for being void, and/or, ORDER me to be allowed a new trial, free of the afore-described procedural and constitutional errors, and all other relief that this Honorable Court deems fair, just, proper, and equitable.

BY: _George Leon Adams_          Date: October 29, 2010
GEORGE LEON ADAMS, **pro se**

## CERTIFICATE OF SERVICE

This Certificate of Service hereby certifies that a true, correct, and verified copy of the foregoing "PETITION FOR A WRIT OF HABEAS CORPUS & APPLICATION" along with the "IN FORMA PAUPERIS AFFIDAVIT" was mailed to the below listed party for service, this the 29th day of October, 2010, via U.S. Postal Service, by handed the properly addressed, postage affixed, envelope, to the institutional mailroom staff.

1. Office of the Clerk
   United States District Court
   for the District of Columbia
   333 Constitution Avenue, N.W.
   Washington, D.C. 20001

Respectfully Submitted,

GEORGE LEON ADAMS
#12021-007
FCC Coleman USP #1
P.O. Box 1033
Coleman, FL 33521-1033