UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

GEORGE LEON ADAMS  
    Plaintiff

v      * Civil Action No. 10-1945 (ESH)

UNITED STATES OF AMERICA

MOVANTS TRAVERSE TO RESPONDENTS
RESPONSE ON PETITION FOR HABEAS
CORPUS PURSUANT TO 28 U.S.C. §2241
§2248

NOW COMES, GEORGE LEON ADAMS, Pstitioner/Plaintiff, with his travers in relation to the Response file in this matter by the Respondent(s) Attorney, Ms. Margaret J. Chriss (Special Assit. united States Attorney), who is identified as the "Government" for convenicence.

This travers will serve as GEORGE LEON ADAMS'S decloration of the facts pursuant to 28 U.S.C §1748, Under the penalty of perjury;

## DISCUSSION

In the Government's response, Ms. Chriss has managed to avoid and/or attempting to confuse the court, with [her] assertion that Movant's is time-barred because, (1) Plaintiff for the first time raised his "alibi" defense more that seven years after he was sentence, (2) because he has a alibi for one (but not both) of the days in question.

## NON-FEDERAL POST-TRIAL APPEALS AND PETITIONS

In January of 1997, Plaintiff filed a petition for a writ of habeas corpus alleging ineffective assistance of trial counsel for failing to make proper pretrial investigation to interview exculpatory witnesses and to present their testimony-amongst other claims.

In January of 1998, Plaintiff assigned counsel for appeal Mr. Stoker came to visit Plaintiff to discuss what issues should be raised in the appeal. At that time irreconcilable differences began to develope in the attorney/client relationship. In spike of those differences, Plaintiff wrote his counsel and request that he raise certain issues. (1) prejury testimony, (2) alibi defence, (3) confrontation clause (4) other crimes evidence. When counsel did not respond, In July of 1998, Plaintiff filed a motion to have appellant counselor removed from his case; stating irreconcilable didderence has arisen in the

attorney/client relationship. In response, counsel denied the allogation and stated that he takes no position as to the appropriateness of appointing new counsel to represent plaintiff. But, would like to assist the court in ruling on defendant's pro se motion. On November 22, 1998, appeal counslor filed a Supplementary motion without consulting with the defendant.

Once Plaintiff had filed a motion to withdraw counsel from his appeal, Judge Richter should have ordered a hearing to determine what and if a conflict of interest existed. Had Judge Richter order a hearing, counsel and Plaintiff would have been able to present all evidence in support of Plaintiff allogation.

In <u>Douglas v United States</u>, 488 A.2d 121, defendant lodge a complaint agaist trial counsel with the Bar Association, Judge rule that the Bar counsel's enquiry in itself created an insurmontable conflict of interest and rule a mistrial. See <u>Mathis v Hood</u>, 937 F.2d 790 (2nd Cir 1991). Conflict of interest accured when defendant file a disciplinary proceeding against counsel, warrented a new appeal.. See <u>Cuyler v United States,</u> 444 US at 345-50 where appeal court stated that (constitutionally defective conflict of interest is never harmess error). See <u>Strickland.</u> 104 S CT at 2067, defence counsel's conflict of interest give rise to a limited presumption of prejuidice. Moreover, certain "personal conflict of interest" may so undermine an attorney's ability to render adequate respentation that require reveral without regards to wheather the defendant objected at trial or is able to show on appeal that adverse effect resulted from the

2

conflict. Also See <u>Farrell v United States</u>, 391 A.2d 775 courts violated his Sixth Amendament right to counsel by failing to conduct sufficent inquire into his pretrial cliam of ineffective assistance of counsel before it denied his motion to change counsel. (reverse)

In May of 1999, Plaintiff wrote to the D.C. Bar association claiming that trial/appellant counsel are refusing to turn over a copy of all transcripts to Plintiff so that he can assist in his appeal.(CJA number 054-99.

In October of 2000 appeals court affirm Plaintiff case. Two weeks later Mr. Stoker sent Plintiff a letter along with a Supreme Court package wishing me luke and stated that he did,nt see a reason to file to Supreme Court, they probably would'nt hear it. It was,nt until Plaintiff got to Terry Haute, Indiana that he was able to reassoiate with family members, love ones and friends. Plaintiff now had to seek aide and advise from other inmates who had some knownledge of the law

On September 16, 2002, Plaintiff filed a pro se motion to correct, set aside or vacate his sentenct, alleging Ineddective assistance of counsel. On October 10, 2002 Judge Richer denied the motion, but grant the motion to proceed informa pauperis. A notice of appeal was filed in D.C, Court of Appeals. In March of 2003, Appeal's Court gave Plaintiff #days to file his brief. In the process of preparing to file a brief Plaintiff became aware of Newly discovered evidence. Ms. Denise Barnes (Mother of his kids) came incontact with one of his alibia witnesses in a grocery store shopping. Mr. Carl Clark stated to Ms Barnes that he wanted to talk with me concerning the

3

matter of trial and asked why my trial counesl would'nt put him on
the stand. Mr. Clark stated that a recess, he inquird about the trial
only to get a rud responce back from Mr. Horton. Mr. Clark and
Mr. Simms would have testified that on July 22, 1995 between the
hours of 8/30am to 10/30 am that Plaintiff was on the black side of
56th and Central ave S.E. when Bobby Hamilton was killed, he could'nt
be the one that killed Bobby Hamilton. In May of 2003, Plaintiff
filed an affidavis in D.C. Appeal Court to withdraw his appeal inview
of newly discovered evidence. Before Plaintiff could filed a motion
in court, Plintiff was transfered Indian, Terry Haute to Big Sandy
in Inez Ky. In January of 2004, Plaintiff was given addictional
infromation concering others witnesses that tried to come forward
to testify on Plaintiff behalf

On March 15, Plaintiff filed another pro se motion to vacate,
correct and/or set aside conviction Pursuant to D.C. code § 23-110.
In this motion, Plaintiff took issues with trial counsel's decision
to not cross examining government witness for bias, and trial counsl
strategic decision not to call exculpatory alibi witnesses in trial
even thoe witnesses was in trial to testify. Judge Richter denied
the motion as successive and without merit. Plaintiff filed a timely
appeall. (No-CO-415). On September 26, 2005, appeal court denied
Plaintiff appeal and issue a memorandum opion and judgment, soon
after Plaintiff filed a motion for rehearing en banc, on January
31,2006, appral court denied motion.

On October 19, 2006, Plaintiff filed his sixth motion under §23-110
Plaintiff argue that the trial court should reenter its March 14,
1997, Judgement and commitment order, the Amended order in which it

corrected the mislabling of Courn N in its intial Judgement and Commitment order, thereby restoring his right to appeal that Order and allowing his to argue to the Superior Court that, in his view, the order erroneously vacated his second-degree murder conviction instead of his felony murder conviction.

On January 30, 2007, the trial court denied Plaintiff motion, but noted that Plaintiff: second degree and attempted armed robbery conviction had never actually been vacated following affirmance of his conviction on direct appeal. Accordingly, that same day, the trial court issued an amended Judgement and Commitment order in which it vacated those conviction and an order releaseing Plaintiff from custody on those counts.

On February 5, 2007 Plaintiff filed a timely notice of appeal of the January 30, 2007, Judgement and Commitment order. Plaintiff argues that the trial court's refusal to vacate his felony murder conviction was an abuse of discretion, and that the prosecutor engage in misconduct during closing argument at the 1997 trial. On December 12, 2007 the District of Columbia Court of Appeals granted summary affirmance.

On October 13, 2009, Plaintiff submitted his petition for recall of the mandate to the District of Columbia Court of Appeals, in which he allege ineffective assistance of appellate counsel, stating that appellate counsel was ineffective for not raising the issue that Plaintiff is raising within the petition. On october 29, 2009, the Court of Appeals denied the petition for recall of mandate.

On October 29, 2010, Plaintiff file a Petition for Writ of Habeas Corpus pursuant to §2241 and §2254.

ANALYSIS ON PITITION FOR HABEAS CORPUS
================================================

A.      EVIDENCE OF INNOCENCE

   Plaintiff submitted a mumber of documents with his Petition that he assert establish his actual innocence, the "gateway" to review of his constitutional claims. These include:

>   Three affidavits from exculpatory witnesses
>
>   An affidavit from Mr. Carl Clark, (who was under defence subpena) stating that on July 22, 1995, between the hours of 8/30am to 10/am that the Plaintiff "George Leon Adams" known as "Bay bro" was with them on the back side of 56th and Central Ave S.E.
>
>   An affidavit from Ms Jackie Wilson, who contacted trial counsel Mr. Horton and asked him to send out his investigator to her home so that she can make out a statement "affidavis" in support of Plaintiff innocense. Her statement is that on July 22, 1995, between the hours of 8/45 am to 9/10 am she left her house inroute to the store which is located on 56th an Central Ave S.E Washington D.C. where she met up with Mr. Melvin Jones and Bay bro. known as "George Leon Adams" in this complaint. At that time they got into an argument about money, she statyed for a few minutes the left.
>
>   An affidavit from Mr. James "Tink" Owens, who 's testimony would be that on July 22, 1995, he was on the back side of 56th and Cemtral Ave. S.E. between the hours of 8/30 am and 10/30 am with Carl Clark, Robert "cowboy" Simms and George Leon Adams known as "Bay bro" when Jackie came up on the black top and talked to Melvin Jones and Bay bro. Stayed for a few minutes then came back down the hill and stayed until he left.

B     CONSTITUTIONAL VIOLATION

Plaintiff offer sufficient proof that trial and appellant counsel were constitutionally deficient in violaton of the Sixth amendment and the prosecutor violated Plaintiff fourteenth amendment.

> Trial counsel fail to call expculpatory "alibi" witnesses and present their testimony, even thoe, they were under defence subpena to testify. Plaintiff was prejudice, where their testimony would have change the outcome, a clear violation of due process of the Sixth amendmant.

> The prosecutor knowing us false testimony to go to the jury uncorrected, a true violation of the fourteenth amendment.

> Trial court abuse it's distretion by allowiny prejudical evidence to inter into trial, after sever was granted.

> Trial cousel fail to properly cross-examine government witness for bias to show motivating factors that prompted Johnson to testify falsely for a promise not to be charge for selling drugs, in violation of the Fourteenth

> A Sixth amemdent violation ac cured between appellant/counsel " a conflict consiting of irreconcilable difference accured during the process of appellant counsel supplimenting Plaintiff §23-110" then allowed to file Plaintiff appeal.

FEDERAL HABEAS PETITION

Under the "actual innocense" exception to the cause and prejudice requirement, the trial court must decide collateral claims

7

on the merits if the Plaintiff establishes that he has a colorable claim of innocence. However the exception applies to actual, not legal, innocence. Actual innocence does not require innocence in the broad sence of having led an entirely blameless life. Rather it refers to a person being "actual innocence of the crime "for which he was convicted.

In Schulp, the U.S. Supreme Court held that there is a "miscarriage of justice" exception to procedural bars in habeas mandates that a prisoner who raises a constitutional claim supplmented by a colorable showing of actual innocence may his collateral challenge on the merits, regardless of procedural obstacles that otherwise bar his claims.

To establish "actual innocence" that overcome the presumption of guilt that attaches after trial and conviction, a plaintiff must produce "new reliable evidence...that was not presented at trial, and demonstrate that, in light of all the evidence,"it is more likely than not that no reasonable juror would have found Plaintiff guilty beyond a reasonable doubt. The "actual innocence" inquiry is properly informed by all the evidence, including "relevant evidence that was either excluded or unavailable at trial. See Bousley v United States, 523 U.S. 614, 631-32 (1998)(under Schlup), "new evidence" is to be evaluated alonf with the "old evidence" consisting of the transcript of the trial). Notably, the reviewing court is not bound by the rules of admissibility retrospectively. After reviewing the totality of the evidence, the court must a "probabilistic decision about what a reasonable

properly instructed jurors would do." However, <u>Schlup</u>, also instructs that a colorable showing of innocence alone is insufficient grounds for vacating a conviction. Rather, this showing must be accompanied by an independent claim that a constitutional error occurred at trial. In <u>Murry v Carrier</u>, 477 US 478, 496, 91 Led 2d 397, 106 S CT 2514, the court stated procedural default would be excused, even in the absence of cause when " a constitutional violation has probably resulted in the conviction of one is actually innocent. In <u>Dretke v Haley</u>, (2004) 158 LEd 2d 659, Supreme Court hold that a federal court faced with allegations of actual innocence, whether of the sentence or of the crime charged, must first address all nondefaulted claims for comparable relief and other grounds for cause to excuse the procedural default.

this avoidance principle was inplict in Carrier itself, where we expressed confidence that, "for the most part, victims of fundamental misscarriage of justice will meet the cause-and-prejudice standard.'" 477 US, at 495-496, 91 L ed 2d 397, 106 S CT 2639 (quoting <u>Engle v Isaac</u>, 456 US 107, 135, 71 L Ed 2d 783, 102 S Ct 1558 (1982)). Our confidence was bolstered by the availability of ineffective assistance of counsel claims-either as a ground for cause or as a free-standing claim for relief-to safeguard against miscarriage of justice. The existence of such safeguards, we observed, "may properly inform this Court's judgement in determining '[w]hat standards should govern the exercise of the habeas court's equitable discretion' with respect to procedurally defaulted claims." <u>Carrier</u>, supra, at 496, 91 L Ed 2d 397, 106 S Ct 2639 (quoting <u>Reed v Ross</u>, 468 US 1, 9, 82 L Ed 2d 1, 104 S Ct 2901 (1984).

In this case, Plaintiff satisfies the requirement of the misscarriage of justice exception set forth in <u>Schlup</u>, <u>Carrier</u> and <u>Dretke</u>. First, as the exception requires, Plaintiff's claim are based on constitutional violations--namely (1) trial counsel fail to call exculpatory "alibi" witness and present their testimony, in violation of due process of the Sixth Amendment, (2) The prosecutor knowing used false testimony to go to the jury uncorrected in violation of the due process clause of the Fourteenth Amendment, (3) Trial court abuse it's distretion by allowing prejudical evidence to inter into tria based on consoladation of offenses, (4) Plaintiff Sixth Amendment right under the confrontation clause was violated, (5) a Sixth Amendment right violation when Plaintiff was denied the right to counsel of choice when "a conflict consiting of irreconcialble difference accured during the process of appellant counsel was suppimenting Plaintiff §23-110" then allowed to file Plintiff appeal, which had an adverse effect.

Plaintiff's constitutional claims are supplemented with newly discovered evidence that demonstrated that he is actually innocent. This evidence, three expculpatory "alibi" witnesses, these affidavis are neighter vague and postulating nor impeaching, if this evidence had been available at trial, the out come could have been different. It is more likely than not that no reasonable juror would have convicted Plaintiff based on the evidence of his actual innocence.

Base on the decision in <u>Schulp v Delo</u>, 513 U.S. 298 (1995), the U.S. Supreme Court held that there is a "miscarriage of justice" exception to procedual bars in habeas corpus proceeding. Id. at

at 316-17. The miscarriage of justice exception mandates that a
prisoner who raises a constitutional claim supplement by a colorable
showing if actual innocence may have his collateral challenge add-
ressed on the merits, regardless of procedural obstacles that
otherwise would bar his claims. Plaintiff clearly meet the require-
ments of the exception. "This court has jurisdiction to hear
Plaintiff's case.

## CONCLUSION

In an attempt to confuse the court, the government continue to present
miss information. The government states that Plaintiff waited
over seven years befor he raise the issue of a alibi defence.
this is false. In the government responce filed 5/12/11, exhibit
1-A. Plaintiff filed a pro se Writ of Habeas Corpus 2/21/1997),
a week after Plaintiff was sentence. In that writ on page 9
paragraph 3, Plaintiff argue that counsel fail to make proper
pretrial investigation to interview exculpatory witnesses and to
present their testimony, constitutes constituional ineffectiveness
Sykes v United States 564 A2d 142 (1980). Plaintiff was only
aware of Ms. Gardill and Mr. Hugo at the time of trial. At no time
was Plaintiff aware of that trial counsel fail to notify the gover-
ment in accord with D.C rule 12.1 #10 day notice of alibi defence.
Plaintiff became aware of the in 2003, once Plaintiff became aware
and able to obtain the affidavis from Ms. Jackie and Mr. Carl clark
Plaintiff file a Writ of Habeas §23-110 under actual innocence

in 2004 of March. (see the date signed for Ms. Jackie and Mr. Clark)

The government concedes that Plaintiff has an alibi for the time and day of the murder of Bobby Hamilton but not both days. However, the government is correct in stating Plaintiff does not have an alibi for both days, (see Government Response at p. 2), but the actual innocence claim presented to this court does not raise the claim of innocence to the robbery count. What Plaintiff does raise, though, is his actual innocence of the murder count; completely two separate counts in the indictment, of which Plaintiff received more prison time on the murder count than the robbery count. Merely because Plaintiff is not contesting his innocence of one charge, i.e., the robbery count, does not remove from the perview of this Court whether Plaintiff is actually innocent of the murder count.

The government continue to mislead the court at page 15-16 footnot #8, by stating to the court that Plaintiff alibi is not an airtight alibi, because the time frames of Plaintiff where about submitted in these witnesses affifavits do not correspond with the time of the officer received the call as to this alleged murder. however, the government's own witnesses testified that the murder of Robert Hamilton occured between the hours of 8:30 and 9:30 am, the exact time frames Plaintiff's witnesses sworn to that Plaintiff was in the vicinity of 56th street, S.E.. Thus, the time the officer received the call has absolutely nothing to do with the time the homicide actually took place, and this "red herring" the government tosses to the court only verifies the weaknesses in the government's position. Moreover, the time it would take the plaintiff to go from

56th street S.E. to First and N Street, N.E. at the bare minimum by automobile would have taken at least 30 to 45 minutes by observing the speed limit and street lights. Contrary, to the government's false contentions, the affidavits do support an air-tight alibi and Plaintiff has made prima facie case of his actual innocence that warrants a hearing; only then, by placing those who sworn to the facts of Plaintiff actual innocence on the witnesses stand, can this court conclusively rule whether Plaintiff actual innocence claim has merit; to do other wise would be a fundamental miscarrige of justice to allow an innocent man to spend the rest of his natural life in prison for a crime to which evidence proves his innocence.

CERTIFICATE OF SERVICE

I hereby certify that a copy was sent to the United States Attorney Office, 555 4th Street N.W. Washington D.C. 2001 on this ⧸ day of June 2011.

Scott Middlebook

George Leon Adams
George Leon Adams
USP Coleman #1
P.O. Box 1033
Coleman, FLorida 33521