UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GEORGE LEON ADAMS, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 10-1945 (ESH) |
| SCOTT MIDDLEBROOKS, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Petitioner George Leon Adams was convicted of attempted armed robbery, first degree murder while armed, assault with a deadly weapon, possession of a firearm during a crime of violence, carrying a pistol without a license, robbery, and second degree murder while armed. Adams has filed a petition for a writ of *habeas corpus*, arguing that his trial and appellate counsel were ineffective, that his Fifth and Sixth Amendment rights were violated, that evidence of "other crimes" was improperly admitted in his trial, and that he is actually innocent. Respondent has moved to dismiss the petition on the grounds that it is untimely. For the reasons discussed below, the motion will be granted.

## BACKGROUND

On July 22, 1995, in an attempt to rob Ronald Wright, Brian Mountjoy and Robert Hamilton at gunpoint, Adams shot and killed Hamilton. (*See* Pet. at 5-11[1]; United States' Motion to Dismiss Petitioner's Petition for Writ of Habeas Corpus ("Def.'s Mot.") at 1.) Two days later, Adams robbed Sterling Johnson at gunpoint. (Pet. at 2; Def.'s Mot. at 2-3.) On

---

[1] References to the Petition ("Pet.") in this Memorandum Opinion are references to Adams's 41-page typewritten statement, entitled "Relief Sought."

November 30, 1995, a grand jury indictment charged Adams with attempted armed robbery (Count C), first degree murder while armed (felony murder) (Count D), first degree premeditated murder while armed (Count E), two counts of assault with a dangerous weapon (Counts F and G), two counts of possession of a firearm during a crime of violence (Counts H and K), two counts of carrying a pistol without a license (Counts I and L), and armed robbery (Count J). (Def.'s Mot. at 2-3.) The Superior Court granted Adams's motion to sever Counts J, K and L, which arose from the Johnson robbery. (*Id.* at 3.)

A jury convicted Adams of Counts C, D, F, G, H, and I. (Def.'s Mot., Ex. A-1 (Mem. Op. & J., *Adams v. United States*, Nos. 97-CF-633 & 99-CO-583 (D.C. May 18, 2000) ("*Adams I*")) at 1.) The jury acquitted Adams of Count E, but found him guilty of second degree murder while armed (Count M), a lesser included offense. Def.'s Mot. at 3. On January 29, 1997, Adams pled guilty to Count J "in exchange for dismissal of" Counts K and L. *Adams I* at 1-2 (footnotes omitted). The court imposed a term of ten to thirty years' imprisonment for Count C, thirty years to life imprisonment for Count D, one to three years' imprisonment for Counts F and G, five to fifteen years' imprisonment for Count H, one to three years' imprisonment for Count I, twenty years to life imprisonment for Count M, and five to fifteen years' imprisonment for Count N. (Def.'s Mot. at 3-4.) The sentences imposed on Counts C, H and M run concurrently with the other sentences, which run consecutively. (*Id.* at 4.) Adams appealed to the District of Columbia Court of Appeals. (*Id.*; Pet. at 2.)

On February 21, 1997, petitioner filed a *pro se* motion under D.C. Code § 23-110 alleging ineffective assistance of trial counsel. (Pet. at 2-3.) The Court of Appeals held the direct appeal in abeyance pending resolution of the § 23-110 motion. (*Id.* at 3; Def.'s Mot. at 4.) Richard Stolker, who was appointed as counsel for Adams, filed a supplement to the § 23-110

petition that alleged ineffective assistance of counsel and requested a new trial. (Pet. at 3; Def.'s Mot. at 4.) The Superior Court summarily denied the § 23-110 motion on April 26, 1999. (Def.'s Mot. at 4-5.) On May 4, 1999, the appeal of the denial of the § 23-110 motion was consolidated with Adams's direct appeal. (*Id.* at 5.) On May 19, 2000, the Court of Appeals affirmed both the summary denial of the § 23-110 motion and Adams's convictions. (Pet. at 3.) *See Adams I*.

Adams subsequently filed several *pro se* motions in Superior Court that asked the court to vacate his convictions. (Pet. at 3-4; Def.'s Mot. at 5-6.) The last of these motions, which was filed under § 23-110, was denied on January 30, 2007. (Pet. at 4.) The Court of Appeals affirmed the denial of this last motion on December 12, 2007. (*Id.*) Adams's motion for recall of the mandate was filed on October 13, 2009, and was denied on October 29, 2009. (*Id.*) Adams submitted his petition to this Court on October 29, 2010.

## ANALYSIS

Adams seeks relief based on: (1) ineffective assistance of trial counsel arising from his failure to present an alibi defense; (2) violations of his Fifth Amendment right to due process and Sixth Amendment right to confront witnesses, arising from allegedly false testimony offered by Sterling Johnson and Tommy Faced and his counsel's failure to conduct proper cross-examination of Johnson; (3) the improper introduction of "other crimes" evidence relating to Johnson's armed robbery; (4) ineffective assistance of appellate counsel; and (5) actual innocence. (*See generally* Pet. at 18-40.) He asks the Court to "[r]ecall the mandate and reopen [his] appeal" before the D.C. Court of Appeals, reverse his conviction, and order a new trial.

I.      THE COURT CONSIDERS ADAMS TO BE A STATE PRISONER

Adams's civil cover sheet states that his habeas corpus petition is filed under 28 U.S.C. § 2241. (Civil Cover Sheet (Dkt. No. 1) at 2.) However, the government argues that Adams's petition was filed under 28 U.S.C. § 2254, which applies to challenges to state court criminal judgments, and must therefore be dismissed because it is untimely. Def.'s Mot. at 7-11. Petitions for writs of habeas corpus filed under 28 U.S.C. § 2254 are subject to a one-year statute of limitations. *See United States v. Hicks*, 283 F.3d 380, 383 (D.C. Cir. 2002); *Williams v. Apker*, 774 F. Supp. 2d 124, 130 (D.D.C. 2011); 28 U.S.C. §§ 2244, 2254. Adams's choice of statute is not dispositive, as a petitioner may not "escape the requirements of § 2254 simply by filing a petition under § 2241." *Peoples v. Schultz*, No. 10-592, 2011 WL 3799546, at *3 (D.D.C. Aug. 29, 2011) (construing § 2241 petition filed by petitioner convicted in Superior Court as § 2254 petition); *Williams*, 774 F. Supp. 2d at 127 n.1 (same).

The Court will construe Adams's petition as though it were filed under § 2254, given the clear weight of authority that finds that a prisoner "in custody pursuant to a judgment of the D.C. Superior Court" must seek habeas review under 28 U.S.C. § 2254. *See Williams*, 774 F. Supp. 2d at 127 n.1; *see also Peoples*, 2011 WL 3799546, at *2-*4; *Bonilla v. Wainwright*, No. 10-0224, 2011 WL 2938125, at *2 (D.D.C. July 22, 2011) (construing petition from prisoner held "pursuant to a judgment of the D.C. Superior Court" as brought under 28 U.S.C. § 2254); *Davis v. Cross*, 774 F. Supp. 2d 62, 64 (D.D.C. 2011) (prisoner filing petition for *habeas corpus* following a judgment in Superior Court brought petition under 28 U.S.C. § 2254); *Banks v. Smith*, 377 F. Supp. 2d 92, 94-95 (D.D.C. 2005) ("D.C. Circuit has consistently held that when considering a writ of habeas corpus a prisoner of the District of Columbia is considered a state prisoner, when the prisoner is held under a conviction of the D.C. Superior Court"); *cf. also*

*Bailey v. Fulwood*, No. 10-463, 2011 WL 677999, at *3 & n.1 (D.D.C. Feb. 15, 2011) (prisoner serving sentenced imposed by the Superior Court was "therefore a state prisoner"). Furthermore, the Circuit recently directed that a Superior Court prisoner's request for a certificate of appeal be examined in light of the standards set forth in § 2254. *Williams v. Martinez*, 586 F.3d 995, 1002 (D.C. Cir. 2009) (citing *Madley v. U.S. Parole Comm'n*, 278 F.3d 1306, 1308-09 (D.C. Cir. 2002) for the proposition that D.C. courts "are deemed to be state courts for purposes of 28 U.S.C. § 2253"). Based on this authority, the Court concludes that Adams should be viewed as a state prisoner and will therefore treat his petition as a habeas petition filed under § 2254.

## II.     TIMELINESS

The government argues that Adams's habeas petition is barred by the one-year limitations period of 28 U.S.C. § 2244(d)(1), which begins to run from (a) the date a judgment becomes final; (b) "the date on which the impediment to filing an application created by State action . . . is removed . . ."; (c) the date on which the Supreme Court recognized a new constitutional right and made it retroactive to cases on collateral review; or (d) the date "on which the factual predicate of the claim . . . presented could have been discovered through the exercise of due diligence." (Def.'s Mot. at 7-11.)  The limitations period is tolled while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." *Id.* § 2244(d)(2).  According to the government, Adams's conviction became final on August 20, 2000, approximately ninety days after the Court of Appeals affirmed it on direct appeal. (Def.'s Mot. at 9.) *See Clay v. United States*, 537 U.S. 522, 527 (2003) (conviction becomes final either when the Supreme Court affirms it on the merits, denies a petition for certiorari, or when the ninety-day period for filing a petition for certiorari expires).  The deadline for filing the instant petition, absent a basis for tolling the limitations period, would have thus

fallen on or about August 21, 2001.  (Def.'s Mot. at 10.)  However, Adams filed a second collateral attack on June 26, 2001, which further tolled the limitations period.  (Reply to Pet'r's Resp. to Govt.'s Mot. to Dismiss ("Def.'s Reply") Ex. 1-D.)  After this attack was denied on July 24, 2001, Adams did not appeal.  Adams did not file a third attack until October 8, 2002.  (*Id.* Ex. 1-E.)  Thus, tolling for the time during which his second motion under § 23-110 was pending, the one-year filing deadline fell on September 18, 2001.

However, the limitations period under § 2244 is not jurisdictional and, thus, "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 130 S. Ct. 2549, 2560 (2010).  In *Williams,* the D.C. Circuit opened the door to federal court review of a D.C. prisoner's claim of ineffective assistance of appellate counsel.  *Williams* was decided on December 23, 2009, and arguably only then was the impediment to Adams's filing of a § 2254 petition challenging the effectiveness of his appellate counsel removed.  *See Williams*, 586 F.3d at 1000 ("we have already recognized some exceptions under section 23-110(g), and today we recognize another").  Adams filed the instant petition ten months later, on October 29, 2010.  Applying either the statutory date of when the impediment was removed or principles of equitable tolling, the Court will deny the government's motion to dismiss the petition as time-barred.

### III.   ADAMS'S CHALLENGE TO ERRORS AT TRIAL

#### A.   D.C. Code § 23-110 Bars Adams's Claims

Adams's claims challenging his trial counsel's performance still fail, however, because the Court lacks jurisdiction.  Under District of Columbia law, a prisoner convicted and sentenced in the Superior Court may file a motion in that court to vacate, set aside, or correct his sentence "upon the ground that (1) the sentence was imposed in violation of the Constitution of the United States or the laws of the District of Columbia, (2) the court was without jurisdiction to impose

the sentence, (3) the sentence was in excess of the maximum authorized by law, [or] (4) the sentence is otherwise subject to collateral attack[.]" D.C. Code § 23-110(a).  Habeas relief in federal court is available to a D.C. Code offender who "is in custody in violation of the Constitution . . . of the United States," 28 U.S.C. § 2241(c)(3), but a petition "shall not be entertained by . . . any Federal court if it appears that the [petitioner] has failed to make a motion for relief under [D.C. Code § 23-110] or that the Superior Court has denied him relief, *unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention*."[2] D.C. Code § 23-110(g) (emphasis added); *Byrd v. Henderson*, 119 F.3d 34, 36-37 (D.C. Cir. 1997) ("a District of Columbia prisoner has no recourse to a federal judicial forum unless the local remedy is inadequate or ineffective to test the legality of his detention"). A remedy is inadequate or ineffective if it deprives the petitioner of "any opportunity for judicial rectification of so fundamental a defect in his conviction as having been imprisoned for a nonexistent offense." *In re Smith*, 285 F.3d 6, 8 (D.C. Cir. 2002) (quoting *In re Davenport*, 147 F.3d 605, 611 (7th Cir. 1998)).

The six § 23-110 motions filed by Adams in Superior Court include a host of claims of ineffective assistance of trial counsel.  (*See* Pet. at 4; *see also* Def.'s Reply, Ex. 1-A; *id.*, Ex. 1-B; *id.*, Ex. 1-D; *id.*, Ex. 1-E.)  Therefore, it cannot be said that he was denied an opportunity to raise his claims or that D.C. courts have not ruled on the merits of those claims.[3]  Indeed, Adams is well aware that he "has presented the claims that he is presenting" to this Court "in multiple D.C. Code § 23-110 motions and [a] petition to recall [the] mandate."  (Pet. at 13.)  The Superior

---

[2] The phrase "'[r]emedy by motion' plainly refers to motions filed pursuant to section 23-110(a)." *Williams*, 586 F.3d at 998.

[3] Adams filed his second collateral attack on June 26, 2001 (*see* Def.'s Reply, Ex. 1-D), his third on October 8, 2002 (*see id.*, Ex. 1-E), his fourth on March 14, 2004 (*see id.*, Ex. 2-A), his fifth on an unknown date, and his sixth on Oct. 19, 2006.  (Pet. at 4.)

Court addressed the merits of this argument in an order issued on April 26, 1999, remarking that Adams "was represented at trial by highly experience[d] and able counsel" and concluding that Adams "ha[d] not shown that there was any material prejudice from trial counsel's choices." (Def.'s Reply, Ex. 1-C, at 3-5.)  Adams has also attacked his conviction on the basis of trial counsel's failure to present alibi witnesses, to cross-examine a witness to expose bias, and to impeach another witness with prior inconsistent statements.  (*Id.*, Ex. 2-A; *id.*, Ex. 2-B.)  The Superior Court is not "required to entertain a second or successive motion for similar relief on behalf of the same prisoner."  D.C. Code § 23-110.  Accordingly, it declined to address the ineffective assistance of trial counsel claim in light of Adams's "fail[ure] to present a reason why he did not raise these issues in either his appeal or in his previous motions."  (Def.'s Reply, Ex. 2-B at 3.)

Adams cannot now bring his various allegations[4] that his trial counsel was ineffective in this federal forum.  His lone justification for doing so — that his prior attempts to challenge his conviction and sentence in D.C. court on this basis have been unsuccessful — is insufficient.  "It is well-established that the mere denial of relief by the local courts does not render the local remedy inadequate or ineffective."  *Joyner v. O'Brien*, No. 09-0913, 2010 WL 199781, at *2 (D.D.C. Jan. 15, 2010) (citations omitted); *see Corley v. U.S. Parole Comm'n*, 709 F. Supp. 2d 1, 5 (D.D.C. 2009) (citing *Garris v. Lindsay*, 794 F.2d 722, 727 (D.C. Cir. 1986)); *see also Morton v. United States*, No. 07-5253, 2008 WL 4726051, at *1 (D.C. Cir. June 12, 2008) (per curiam) (denying request for certificate of appealability on the grounds that appellant "may not challenge his District of Columbia convictions in federal court unless his remedy under D.C. Code § 23-

---

[4] Specifically, Adams alleges that his trial counsel was ineffective because he failed to pursue an alibi defense, allowed false testimony from Sterling Johnson and Tom Facen, failed to cross-examine Johnson adequately, and allowed evidence of the June 24, 1995 robbery of Johnson to be introduced at trial,

110 is inadequate or ineffective to test the legality of his detention . . . , and [t]he § 23-110 remedy . . . is not considered inadequate or ineffective simply because the requested relief has been denied"). Thus, this Court lacks jurisdiction over these claims. *See Williams*, 586 F.3d at 998 (§ 23-110 "divests federal courts of jurisdiction to hear habeas petitions by prisoners who could have raised viable claims pursuant to § 23-110(a)").

> **B.     The "Actual Innocence" Exception Does Not Apply**

Adams acknowledges the procedural bar to claims arising from alleged trial errors. (*See* Pet. at 11-15; *see also* Pl.'s Resp. to Gov't Brief Opp'n ("Pet'r Opp'n").) Relying on *Schlup v. Delo*, 513 U.S. 298 (1995), Adams attempts to overcome the "cause and prejudice" bar by coupling the alleged constitutional errors during the criminal proceedings in the Superior Court with an assertion of his actual innocence. (*See* Pet'r Opp'n at 13-17; Movant[']s Traverse to Respondent[']s Resp. on Pet. for Habeas Corpus ("Traverse") at 8-12.)  In "extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime," a federal court may entertain a habeas action "despite a petitioner's failure to show cause for a procedural default." *McCleskey v. Zant*, 499 U.S. 467, 494 (1991).  Adams argues that his case falls within the "narrow class of cases" in which a "constitutional violation probably has caused the conviction of one innocent of the crime . . . implicating a fundamental miscarriage of justice." *Id.*; *see Schlup*, 513 U.S. at 321 ("To ensure that the fundamental miscarriage of justice exception would remain 'rare' and would only be applied in the 'extraordinary case' while at the same time ensuring that the exception would extend relief to those who were truly deserving, this Court explicitly tied the miscarriage of justice exception to the petitioner's innocence."). "To be credible, . . . a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory

9

scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324.  Where, as here, a "petitioner asserts his actual innocence of the underlying crime, he must show 'it is more likely than not that no reasonable juror would have convicted him in light of the new evidence' presented in his habeas petition." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup*, 513 U.S. at 327).

       Adams's evidence of actual innocence comes by way of affidavits from Carl Clark and Jackie Wilson, both of whom place Adams in the vicinity of 56th Street and Central Avenue, S.E., in Washington D.C., around the time of Hamilton's murder.  (*See* Pet., Ex. C (Aff. of Carl Clark) ¶ 2; *id.*, Ex. D (Aff.) ¶ 2.)  The affiants state that Adams's trial counsel did not call them to testify in Adams's defense, notwithstanding their willingness to do so.  (*Id.*)  The proffered testimony from Clark and Wilson is not new, and was known to Adams's trial counsel at the time of his trial.  Moreover, the affidavits Adams presents were executed years ago and were presented to Superior Court in 2004.  Thus, the evidence Adams presents is not "new" and does not support his claim of actual innocence.

       Adams also submits the affidavit of James (Tink) Owens, who also saw him in the "projects (East Capitol Dwelling), which is located on 56th [P]lace and Central Ave., S.E.," around the time of Hamilton's murder.  (Pet'r Opp'n, Ex. 2 at 1.)  Owens's affidavit, which was executed on February 2, 2011, is recent, but is no more useful than those of Clark and Wilson.  At best, these affiants place petitioner across town at around the time of Hamilton's murder.  None of these affiants states that he or she was with Adams for any extended period of time; he arguably could have committed the offenses for which he was convicted and traveled to the East Capitol Dwellings afterwards.  Even if true, their testimony does not make it "more likely than

not that no reasonable juror would have convicted him," and it does not establish his innocence. *See Calderon*, 523 U.S. at 559.

## IV. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Adams may, however, bring a claim of ineffective assistance of appellate counsel because the D.C. Court of Appeals bars such challenges. *See Williams*, 586 F.3d at 998-99. In assessing such a claim, the Court applies the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984),[5] which in the appellate context has been explicated as follows:

> [Petitioner] must first show that his counsel was objectively unreasonable in failing to find arguable issues to appeal — that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them. If [petitioner] succeeds in such a showing, he then has the burden of demonstrating prejudice. That is, he must show a reasonable probability that, but for his counsel's [error], he would have prevailed on his appeal.

*Smith v. Robbins*, 528 U.S. 259, 285 (2000) (internal citations omitted); *see also Williams v. Martinez*, 683 F. Supp. 2d 29, 32 (D.D.C. 2010) (petitioner must show that appellate counsel's performance was "(1) deficient and (2) prejudiced his defense such that there was a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.") (internal quotation marks and citation omitted).

According to Adams, Stolker's performance was deficient because he failed "to raise [an] issue on appeal that would have rendered a not guilty verdict." (Pet. at 39.) Adams fails, however, to mention any issue that appellate counsel did not raise. (*Id.* at 39-40.) The record reflects that Stolker argued ineffective assistance of trial counsel in the District of Columbia courts, noting the following deficiencies: (1) failure to make an on-site inspection of the crime

---

[5] Under *Strickland*, a petitioner claiming ineffective assistance of counsel must show that counsel made "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and that the errors "deprive[d] the defendant of a fair trial, a trial whose result is reliable," such that the "deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687.

11

scene and immediate vicinity, rendering him "severely handicapped in identifying and effectively utilizing inconsistencies in the testimony of government witnesses"; (2) failure to "argue[] vigorously to exclude evidence of the June 24 robbery [of Sterling Johnson] from the trial of the July 22 attempted robbery and murder [of Robert Hamilton]," and (3) failure to disclose Mr. Johnson's "extortionate out-of-court offer" not to press charges in exchange for a payment of money."  (Def.'s Reply, Ex. 1-B at 14-16.)  Adams has not persuaded the Court that Stolker failed to find arguable issues to appeal or that, but for Stolker's error, there is a reasonable probability that Adams would have prevailed in his appeal to the Court of Appeals.  Therefore, the Court rejects Adams's ineffective assistance of appellate counsel claim.

## CONCLUSION

Although the Court does not find that Adams's petition was untimely, he cannot raise his claims of trial court error because they already have been raised in Superior Court and reviewed by the D.C. Court of Appeals.  Moreover, he has failed to demonstrate any error by his appellate counsel, let alone an error of such severity that it caused him to lose his appeal.  Finally, he has presented no persuasive new evidence to support a claim of actual innocence.  The Court will, therefore, deny his petition for a writ of *habeas corpus*.  A separate Order accompanies this Memorandum Opinion.

/s/
ELLEN SEGAL HUVELLE
United States District Judge

DATE: September 9, 2011